627 A.2d 297

The MORNING CALL, INC. and Richard Cowen

v.

LOWER SAUCON TOWNSHIP and John A. Werner.

Appeal of LOWER SAUCON TOWNSHIP, Appellant.

Commonwealth Court of Pennsylvania.

Argued March 30, 1993.

Decided June 24, 1993.

Edward J. McKarski, for appellant.

Michael A. Henry, for appellees.

Before PALLADINO and PELLEGRINI, Judges, and NARICK, Senior Judge.

PELLEGRINI, Judge.

Lower Saucon Township (Township) appeals an order of the Northhampton County Court of Common Pleas (trial court) requiring the Township to disclose the terms of a settlement agreement between itself and John Werner (Werner) to The Morning Call pursuant to the Right to Know Act, Act of June 21, 1957, P.L. 390, *as amended,* 65 P.S. §§ 66.1–66.4.

On February 14, 1991, Werner filed a federal civil rights lawsuit in the United States District Court for the Eastern District of Pennsylvania[1] against the Township, alleging his civil rights were violated by Township police officers. The Township reached an out-of-court settlement (Settlement Agreement) with Werner in which he was compensated by the Township's Comprehensive Law Enforcement Liability Insurance policy issued by Scottsdale Insurance Company (insurance carrier).[2] The Settlement Agreement provided that none of the parties were to disclose its terms. Because the Township had a Five Thousand Dollar ($5,000) deductible, it was required to pay that portion of the award. However, it did not pay that amount directly to Werner, but to its insurance carrier.

The Morning Call, a newspaper of general circulation in Northhampton County, requested the Township make the Settlement Agreement available for inspection as a "public record" under Sections 1(2) and 2 of the Pennsylvania Right to Know Act.[3] Based upon the non-disclosure clause in the

1. *John A. Werner v. Lower Saucon Township, Brian F. Paulson and Stephen Lindstedt,* No. 91–0313 (E.D.Pa. filed February 14, 1991).

2. Scottsdale Insurance was not joined as a party in this appeal and no allegation is being made that it is a necessary party. The insurance policy between the Township and Scottsdale is not part of the record. We do not address whether a settlement agreement entered into by an insurance carrier to cover a claim made under a policy that does not require a government agency's consent and to disburse any funds is a "public record".

3. Section 1 of the Right to Know Act, 65 P.S. § 66.1(2), defines "public record" as follows:

Any ... contract dealing with the receipt or disbursement of funds by an agency ... and any minute, order or decision by an agency

Settlement Agreement, the Township refused to allow it to be inspected or copied.[4] The Morning Call filed an appeal[5] with the trial court, seeking an order requiring the Township to disclose the terms of the Settlement Agreement and joined Werner as a party. Both the Township and Werner opposed the request, asserting that the Settlement Agreement did not fall within the definition of a "public record" as defined in the Right to Know Act.[6]

■ The trial court granted The Morning Call's appeal, holding that the Township's Settlement Agreement with Werner was a public record both because it created a contractual obligation that required the Township to compensate Werner and it was also a record of a decision or order that affected Werner's rights. The trial court ordered the Township to make the Settlement Agreement available for examination and

fixing the personal or property rights, privileges, immunities, duties or obligations of any person....
Section 2 of the Right to Know Act, 65 P.S. § 66.2, provides:
Every public record of an agency shall, at reasonable times, be open for examination and inspection by any citizen of the Commonwealth of Pennsylvania.

4. Because there was no court order approving the settlement, the federal action was apparently settled pursuant to Fed.R.Civ.P. 41(a)(1) which provides:
(a) Voluntary Dismissal: Effect Thereof.
(1) By Plaintiff; By Stipulation. Subject to the provisions of Rule 23(e), of Rule 66, and of any statute of the United States, an action may be dismissed by the Plaintiff without order of court ... (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action. Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice....
When a lawsuit is dismissed pursuant to this subsection, the federal district court does not retain jurisdiction over the settlement agreement. If, however, this matter had been settled by order of court in accordance with Fed.R.Civ.P. 41(a)(2), which provides for settlements with court approval, the federal district court would have retained continuing jurisdiction; correspondingly, the trial court and this court would be without jurisdiction to hear this matter. *See Smith v. Phillips*, 881 F.2d 902, 904 (10th Cir.1989); *Hinsdale v. Farmers National Bank and Trust Company*, 823 F.2d 993, 996 n. 1 (6th Cir.1987).

5. Section 4 of the Right to Know Act, 65 P.S. § 66.4.

6. Werner did not appeal from the trial court's decision.

inspection by The Morning Call. This appeal followed.[7]

On appeal, the Township contends that the trial court erred in holding that the Settlement Agreement was a "public record"[8] because it did not require the Township to disburse public funds directly to Werner.[9] For a settlement agreement to be a public record, the Township contends that it has to result in the direct payment of funds to the named defendant. The Township further argues that even though it was obligated to pay Five Thousand Dollars ($5,000) to the insurance carrier to cover its deductible as a result of the settlement, that transaction was separate and apart from the Settlement Agreement. In effect, the Township is asserting that a governmental body can make a contract not a public record by having someone else initially pay the money the governmental body is obligated to pay, even though it later reimburses the party that paid its obligation created by the now non-public agreement.

The Township's interpretation of what is a public contract, however, is directly contrary to the plain language of the Right to Know Act. Section 66.1 defines a public record, in part, as a contract "dealing with" the disbursement of public

7. Our scope of review under the Right to Know Act is limited to determining whether the agency's denial of the request for the desired information was for just and proper cause. 65 P.S. § 66.4; *City of Chester v. Getek*, 132 Pa.Commonwealth Ct. 394, 397 n. 3, 572 A.2d 1319, 1320 n. 3 (1990). The right to examine depends on whether the documents sought fall within the Right to Know Act's definition of a public record as a "contract dealing with the receipt or disbursement of funds by an agency...". *Hoffman v. Pennsylvania Game Commission*, 71 Pa.Commonwealth Ct. 99, 103, 455 A.2d 731, 733 (1983).

8. The Township also contends that The Morning Call's failure to move for deposition on disputed facts pursuant to Pa.R.C.P. 209 resulted in the admission of all well-pled facts in its Answer. The Township contends the admission of its averments results in the newspaper's failure to meet its burden of proof that public funds were disbursed to Werner. However, we have previously held that the Rules of Civil Procedure do not apply to the procedures under the Right to Know Act appeals. *Schultz v. Board of Supervisors of Jackson Township*, 95 Pa.Commonwealth Ct. 550, 553, 505 A.2d 1127, 1128 (1986).

9. Because we find that the Settlement Agreement is a contract requiring the disbursement of public funds, we need not address whether it was a decision or order affecting Werner's rights.

funds, not merely one disbursing public funds directly to the other party. By using this language, the General Assembly indicated that as long as the contract dealt with the possible appropriation of public funds, the contract was a public record subject to inspection.[10]

10. The Morning Call cites numerous cases from other jurisdictions holding that settlement agreements are "public records". Those cases are inapposite because of the difference in language between those states' "Right to Know" statutes and Pennsylvania's. Pennsylvania's Right to Know Act has a much more restrictive definition of "public record" than those involved in the cases to which The Morning Call cites.

| CASE | STATE STATUTE |
|---|---|
| Anchorage School District v. Anchorage Daily News, 779 P.2d 1191 (Alaska 1989) | Unless specifically provided otherwise, the books, records, papers, files, accounts, writings and transactions of all agencies and departments are public records and are open to inspection by the public under reasonable rules during regular office hours.... [Alaska Public Records Act § 09.25.-110] |

* * *

| | |
|---|---|
| Guy Gannett Publishing Co. v. University of Maine, 555 A.2d 470 (Me. 1989) | The term "public record" means any written, printed or graphic matter or any mechanical or electronic data compilation from which information can be obtained, directly or after translation, into a form susceptible of visual or aural comprehension, that is in the possession or custody of an agency or public official of this State or any of its political subdivisions, ... of any of these entities, and has been received or prepared for use in connection with the transaction of public or governmental business or contains information relating to the transaction of public or governmental business, except: [Maine Freedom of Access Act 1 M.R.S.A. § 402(3)] |

* * *

| | |
|---|---|
| The Daily Gazette Company, Inc. v. Withrow Sheriff, 177 W.Va. 110, 350 S.E.2d 738, 743 (1986) | "Public record" includes any writing containing information relating to the conduct of the public's business, prepared, owned and retained by a public body. [West Virginia Freedom of Information Act § 29B-1-2] |

* * *

Here, the Township signed the Settlement Agreement, making it obligated to pay the entire settlement if its insurance carrier failed to do so. For that reason alone, the document is a public record. Not only did the Settlement Agreement make the Township obligated to satisfy Werner's claim if the insurance carrier did not, the Settlement Agreement obligated it to make an appropriation of public money. It required the Township to pay Werner the Five Thousand Dollars ($5,000) that the insurance company was not obligated to pay under the terms of the insurance policy. Paying the money to the insurance carrier and not directly to Werner does not change the fact that it was used to satisfy the Township obligation, and, "laundering" it through the insurance carrier does not somehow change the character of those funds from public to private. Because it obligates the Town-

| CASE | STATE STATUTE |
|---|---|
| Dutton v. Guste, 395 So.2d 683 (La. 1981) | All books, records, writings, accounts, letters ... having been used, being in use or prepared, possessed or retained for use in the conduct, transaction or performance of any business, transaction, work, duty or function which was conducted, transacted or performed by or under the authority of the constitution or laws of this state or by or under the authority of any ordinance, regulation, mandate or order of any public body concerning the receipt or payment of any money received or paid by or under the authority of the constitution or laws of this state, are "public records" except as otherwise provided in this chapter or as otherwise specifically provided by law. [Louisiana Public Records Law LSA–R.S. § 44:1(2)] |

\* \* \*

| | |
|---|---|
| The News and Observer Publishing Co. v. Wake County Hospital System, Inc., 55 N.C.App. 1, 284 S.E.2d 542 (1981) | Public record or public records shall mean all documents, papers, letters, maps, books ... made or received pursuant to law or ordinance in connection with the transaction of public business by any agency of North Carolina government or its subdivisions.... [North Carolina Public Records Act § 132–1] |

\* \* \*

ship to disburse public funds to satisfy an obligation, the Settlement Agreement is a public record and subject to public inspection and copying.[11]

Accordingly, the well-reasoned decision and order of Judge Robert A. Freedberg of the Northhampton County Court of Common Pleas is affirmed.

## ORDER

AND NOW, this 24th day of June, 1993, the order of the Court of Common Pleas of Northhampton County dated August 13, 1992, No. 1992–C–3260, is affirmed.

---

**11.** Despite the Township's contention otherwise, the public policy in favor of settlements is in no way impinged by making settlement agreements entered into by a governmental agency public. *See Rothman v. Fillette,* 503 Pa. 259, 266–67, 469 A.2d 543, 546 (1983).