**TRIBUNE–REVIEW PUBLISHING COMPANY**

v.

**WESTMORELAND COUNTY HOUSING AUTHORITY,**
Appellant.

Commonwealth Court of Pennsylvania.

Argued Feb. 11, 2002.
Decided April 10, 2002.

J. Michael Adams, Pittsburgh, for appellant.

Ronald D. Barber, Pittsburgh, for appellee.

Before McGINLEY, J., SIMPSON, J., McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

The Westmoreland County Housing Authority (Housing Authority) appeals from an order of the Court of Common Pleas of Westmoreland County (trial court), which determined that a settlement agreement between parties to a civil lawsuit constituted a "public record" pursuant to what is commonly referred to as the "Right to Know Law" (Law), Act of June 21, 1957, P.L. 390, as amended, 65 P.S. §§ 66.1–66.4. The trial court further ordered the Housing Authority to authorize its insurance company to provide copies of the settlement agreement at issue to the Tribune–Review Publishing Company (Tribune–Review).[1] We affirm.

The facts of the underlying suit are as follows. On March 29, 1999, Mary McCollough (Plaintiff), a former employee of the Housing Authority, filed a civil complaint in the United States District Court for the Western District of Pennsylvania (district court), against the Housing Authority and its executive director, Leonard Paletta (Paletta) (collectively, Defendants). The complaint alleged that Defendants discriminated against Plaintiff and subjected her to a hostile work environment because of her gender. Defendants were represented by their insurance carrier, the Housing and Redevelopment Insurance Exchange (HARIE).[2]

On November 30, 2000, Plaintiff and HARIE reached a settlement agreement providing that Plaintiff would dismiss the complaint in exchange for an undisclosed sum of money.[3] The settlement agree-

---

1. The Tribune–Review is the owner of a newspaper of general circulation in Western Pennsylvania know as *The Tribune–Review*.

2. HARIE is a reciprocal form of insurance company which is fully licensed in Pennsylvania and regulated by the Pennsylvania State Insurance Department. HARIE's articles of

agreement, signed by the Housing Authority, unilaterally provide HARIE with full power to settle and adjudicate claims.

3. The Housing Authority objected to HARIE's settlement of the matter. The settlement proceeds were paid to Plaintiff by HARIE and not the Housing Authority.

ment contained a confidentiality clause and was signed by Plaintiff and HARIE. The Housing Authority was not a party to the agreement. To date, the Housing Authority has never been in possession of the settlement agreement.

By letter dated January 30, 2001, Tribune–Review requested that the Housing Authority provide it with access to the settlement agreement. The Housing Authority refused, maintaining that the settlement agreement was not a "public record" under the Law. Thereafter, Tribune–Review filed a notice of appeal with the trial court. After conducting a hearing, the trial court concluded that the settlement agreement was a "public record" and ordered the Housing Authority to direct HARIE to provide Tribune–Review with a copy of such. The Housing Authority appealed.

 On appeal to this Court,[4] the Housing Authority argues that the trial court erred by concluding that the settlement agreement is a "public record." Specifically, the Housing Authority argues that since it was not party to the settlement agreement, did not negotiate or consent to the settlement or pay the proceeds of the agreement, the settlement agreement is not a "public record." Additionally, the Housing Authority asserts that if it is determined that the settlement agreement is a "public record," the Housing Authority is not required to disclose the contents of such since it falls within the prejudice of reputation/personal security exception to the definition of "public record" under the Law. Finally, the Housing Authority argues that since the Housing Authority was not a party to the settle-

ment agreement and never had possession of the document, it has no duty to obtain to settlement agreement. We disagree.

Initially, we note that the Law authorizes this Court to compel an agency to make public records available for review by the citizens of this Commonwealth.[5] Section 2 of the Law, 65 P.S. § 66.2, provides that "every public record of an agency shall, at reasonable times, be open for examination and inspection by any citizen of the Commonwealth of Pennsylvania." Section 1(2) of the Law, 65 P.S. § 66.1(2), defines a "public record" as follows:

> Any account, voucher or contract dealing with the receipt or disbursement of funds by an agency or its acquisition, use or disposal of services or of supplies, materials, equipment or other property and any minute, order or decision by an agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons: Provided, That the term 'public records' shall not mean any report, communication or other paper, the publication of which would disclose the institution, progress or result of an investigation undertaken by an agency in the performance of its official duties, except those reports filed by agencies pertaining to safety and health in industrial plants; it shall not include any record, document, material, exhibit, pleading, report, memorandum or other paper, access to or the publication of which is prohibited, restricted or forbidden by statute law or order or decree of court, or which would operate to the prejudice or impairment of a person's reputation or personal security, or which would re-

---

4. Our scope of review is limited to a determination of whether the request for information was for just and proper cause. *Aronson v. Pennsylvania Department of Labor and Industry,* 693 A.2d 262 (Pa.Cmwlth.1997).

5. The Housing Authority does not dispute that it is an "agency" under the meaning of the Law. However, it maintains that the real party to the settlement agreement, HARIE, is not an agency under the Law.

sult in the loss of by the Commonwealth or any of its political subdivisions or commissions or State or municipal authorities of Federal funds, excepting therefrom however the record of any conviction for any criminal act.

Hence, there are two categories of public records that are required to be disclosed under the Law: (1) any account, voucher or contract dealing with the receipt or disbursement of funds by an agency; and (2) any minute, order or decision by an agency fixing the personal or property rights of any person or group of persons. The dispute presently before us involves the former, i.e., a contract dealing with the disbursement of agency funds.

Both parties cite the decision in *Morning Call, Inc. v. Lower Saucon Township*, 156 Pa.Cmwlth. 397, 627 A.2d 297 (1993), in support of their respective arguments. In *Morning Call*, a plaintiff filed a complaint in federal court alleging that his civil rights were violated by the Township's police officers. The plaintiff and Township subsequently negotiated a settlement agreement providing for the Township to pay the deductible to its insurance carrier which in turn compensated the plaintiff. The Morning Call requested the Township to make the settlement agreement available for inspection but the Township refused, asserting that the agreement was not a "public record." The Morning Call appealed and the trial court reversed. The matter was appealed to this Court, which held that the settlement agreement was a "public record" for the purposes of the Law.[6] The opinion provides in pertinent part:

> Here, the Township signed the Settlement Agreement, making it obligated to pay the entire settlement if its insurance carrier failed to do so. For that reason alone, the document is a public record. Not only did the Settlement Agreement make the Township obligated to satisfy [the plaintiff's] claim if the insurance carrier did not, the Settlement Agreement obligated it to make an appropriation of public money. It required the Township to pay [the plaintiff] the Five Thousand Dollars ($5,000) that the insurance company was not obligated to pay under the terms of the insurance policy. Paying the money to the insurance carrier and not directly to [the plaintiff] does not change the fact that it was used to satisfy the Township obligation, and, 'laundering' it through the insurance carrier does not somehow change the character of those funds from public to private. Because it obligates the Township to disburse public funds to satisfy an obligation, the Settlement Agreement is a public record and subject to public inspection and copying.

*Morning Call*, 627 A.2d at 300–01. However, the Court specified in a footnote that it was not addressing what appears to be the facts of the present case, i.e., whether a settlement agreement entered into by an insurance carrier to cover a claim made under a policy that does not require a government agency's consent to disburse any funds constitutes a "public record." *Id.* at 298, n. 2.

The Housing Authority argues that *Morning Call* is distinguishable from the present case based on the following facts: 1) that the Housing Authority was neither a party nor a signatory to the agreement; 2) the Housing Authority did not pay the proceeds of the settlement agreement to Plaintiff; and 3) the Housing Authority is

---

**6.** Since the Court held that the settlement agreement constituted a "public record" under the first definition, i.e., a contract dealing with the disbursement of funds, it did not address the issue of whether it met the second definition, i.e., a decision or order fixing the plaintiff's rights.

not secondarily liable to Plaintiff in the event of a breach as the Township was in *Morning Call.* Having reviewed the record in its entirety, we nevertheless conclude that *Morning Call* is persuasive and that the settlement agreement at issue constitutes a "public record" within the meaning of the Law.

The very nature of the relationship between the Housing Authority and HARIE blurs the line between insurer and insured. First, as Charles Volpe, president of Excaliber Insurance Management Services and Foxco Insurance Management Services,[7] testified, HARIE is comprised of equity members or subscribers, all of which are public housing authorities in Pennsylvania. Secondly, Mr. Volpe testified that HARIE is a reciprocal insurance company which, by statute, is run by an attorney-in-fact.[8] Mr. Volpe explained that "the attorney-in-fact is essentially given power of attorney by all of the subscribers in an agreement they sign to act on their behalf." (R.R. at 72a). Finally, although Mr. Volpe testified that Mr. Paletta did not participate in any decision concerning the settlement of this case, Mr. Paletta was both a member and officer of HARIE's board of directors. (R.R. at 78a).

As the trial court correctly observed, when involved in a reciprocal insurance policy, a subscriber acts as both an insured and an insurer. *See Neel v. Crittenden,* 353 Pa. 201, 44 A.2d 558 (1945). Moreover, our own Supreme Court has stated that, "the subscribers to an exchange are not merely underwriters, for they are themselves insured. ....The feature of exchanged risks and mutuality distinguish reciprocal insurance from individual insurance." *Long v. Sakleson,* 328 Pa. 261, 264–65, 195 A. 416, 419 (1937). Logic dictates then, that if the Housing Authority is insuring itself, its funds are implicated in the settlement of any claim by HARIE and, as the trial court stated, "[t]he implication of public funds in the settlement, likewise, leads ·to the conclusion that the settlement documents are a public record." (Trial court opinion at page 6).

Like the Township in *Morning Call,* the Housing Authority is, in effect, attempting to change the character of the funds at issue from public to private. Although the facts of this action and *Morning Call* may be different, the desired result is the same and equally unfavorable. As this Court recognized in *Associated Builders & Contractors, Inc. v. Department of General Services,* 747 A.2d 962, 965 (Pa.Cmwlth.2000)(citing *Morning Call,* 627 A.2d 297, 300–01), "an agency may not shield a public document from disclosure by contracting with a third party that subsequently disperses the government funds. By paying through a third party, an agency does not change the character of those funds from public to private." Thus, in light of the unique relationship between the Housing Authority and HARIE, the trial court was correct when it concluded that the funds implicated in the settlement agreement are essentially those of the Housing Authority and that the settlement agreement is a "public record" for purposes of the Law.

---

**7.** Excaliber and Foxco are the attorney-in-fact for HARIE.

**8.** Section 1001 of the Insurance Company Law of 1921, Act of May 17, 1921, P.L. 682, *as amended,* 40 P.S. § 961, recognizes such arrangements and states:

Individuals, partnerships and corporations of this Commonwealth, hereby designated subscribers, are hereby authorized to exchange reciprocal or inter-insurance contracts with each other, or with individuals, partnerships, and corporations of other States and countries, providing indemnity among themselves from any loss which may be insured against under any provision of the insurance laws excepting life insurance.

■ Next, the Housing Authority argues that the settlement agreement falls within an exception to the definition of public record in that disclosure of the agreement "would operate to the prejudice of or impairment of a person's reputation or personal security." *See* Section 1(2) of the Law, 65 P.S. § 66.1(2). Specifically, the Housing Authority asserts that disclosure of the settlement agreement would harm Plaintiff's reputation since readers of *The Tribune–Review* would formulate opinions about the settlement amount in relation to the allegations set forth in the complaint.

■ Generally, courts have recognized that certain types of information are protected by this exception.[9] However, the phrase "personal security" as used in Section 1(2) of the Law does not mean "personal privacy." *Kanzelmeyer v. Eger,* 16 Pa.Cmwlth. 495, 329 A.2d 307 (1974). In the present case, the allegations against the Housing Authority are already a matter of public record through the filing of the complaint. Moreover, Mr. Volpe testified that the settlement agreement makes no admission of liability. (R.R. at 83a–84a). Consequently, we agree with Tribune–Review that disclosure of the settlement agreement would not harm anyone's reputation or personal security and conclude that the Housing Authority's assertions are without merit.

■ Lastly, the Housing Authority argues that since it was not a party to the settlement agreement and it was never in possession of the document, it has no duty

to obtain the settlement agreement. Specifically, the Housing Authority takes issue with the trial court's reliance on this Court's decision in *Carbondale Township v. Murray,* 64 Pa.Cmwlth. 465, 440 A.2d 1273 (1982). In *Carbondale,* a newspaper requested a township to make available the township's cancelled checks as public records. The township refused on the basis that the checks were not in its possession but were in the possession of the township's bank. The trial court ordered the township to produce the checks and the township appealed to this Court, arguing that the trial court improperly ordered the township's bank to produce its business records. The *Carbondale* Court disagreed and affirmed the trial court's order, stating:

> While the Township may not have actual possession of its cancelled checks, it has control over their production in that it can authorize the bank to produce them.
>
> . . .
>
> If we would conclude that the lower court was in error in this regard, we would be permitting any governmental body to escape public scrutiny of its records by simply alleging that it no longer has possession of its public records. Courts have the power to grant complete relief and unquestionably may do so when such complete relief would be, as here, in furtherance of the public interest.

*Id.* at 1275.

Contrary to the Housing Authority's assertions, we believe *Carbondale* is directly

---

9. *See Cypress Media, Inc. v. Hazelton Area School District,* 708 A.2d 866 (Pa.Cmwlth. 1998), *appeal dismissed,* 555 Pa. 340, 724 A.2d 347 (1999)(even if applications for teacher positions in school district constituted public records, they would not be disclosed to newspaper because application contained confidential information protected by law from disclosure, i.e., home addresses, social

security numbers, college transcripts, physical examination reports and child abuse clearances); *Times Publishing Co., Inc. v. Michel,* 159 Pa.Cmwlth. 398, 633 A.2d 1233 (1993), *petition for allowance of appeal denied,* 538 Pa. 618, 645 A.2d 1321 (1994)(home addresses, telephone numbers and social security numbers are within the personal security exception to the definition of public record).

on point. If nothing else, *Carbondale* stands for the proposition that a court may order an agency to authorize those in possession to produce records when the agency has control over their possession. In this regard, we emphasize that Mr. Volpe testified that he is the person who is ultimately in control of the settlement agreement and that he would provide a copy of the document to the Housing Authority if requested to do so. (R.R. at 90a). Thus, the trial court did not err when it ordered the Housing Authority to authorize HARIE's attorney-in-fact to produce a copy of the settlement agreement for inspection by Tribune–Review.

Accordingly, the order of the trial court is hereby affirmed.

### ORDER

AND NOW, this 10th day of April, 2002, the order of the Court of Common Pleas of Westmoreland County is hereby affirmed.