**Ashley HABER,**

v.

**Michael K. EVANS, Commissioner Paul Evanko, Deputy Commissioner Lieutenant Colonel Thomas Courey, Major Hawthorne Conley, Major Robert G. Wertz, Captain Thomas J. LaCrosse, Captain Larry Williams, Captain**

Geoffrey G. Miller, Lieutenant David B. Kreiser, Lieutenant Dennis Hunsicker, Sergeant Kevin T. Krupiewski, Sergeant Gary Fasy, Corporal Douglas R. Brose, Rose Polek, Michael R. White, and Sabina Howell, Esquire.

No. 03–CV–3376.

United States District Court,
E.D. Pennsylvania.

June 17, 2003.

Michael E. Baughman, Dechert, Price & Rhoads, Philadelphia, PA, for Intervenor.

Thomas W. Sheridan, Philadelphia, PA, for Plaintiff.

## *MEMORANDUM OPINION AND ORDER*

RUFE, District Judge.

Before the Court is the Motion of Philadelphia Newspapers, Inc. for Access to

Judicial Records and Proceedings in the above-captioned matter.[1] On June 12, 2003, the Court held a hearing on the instant Motion at which time it heard oral argument from counsel of the named parties as well as Intervenor Philadelphia Newspapers, Inc. Thereafter, the Court took the Motion under advisement.

## FACTUAL BACKGROUND

The above-captioned case is one of six related cases filed against Pennsylvania State Police officials as the result of the sexual misconduct of former state trooper, Michael K. Evans. The first five cases were consolidated under *Maslow v. Evans*, No. 01–CV–3636.[2] Each of the cases was filed by a female plaintiff for civil rights claims pursuant to 42 U.S.C. § 1983 against various Pennsylvania State Police officials due, *inter alia*, to alleged customs and policies, including those relating to hiring, supervision, and internal investigating procedures, that tolerated sexual harassment and misconduct.[3]

The Complaint in the above-captioned case alleges that on April 16, 1998, Evans,

1. Philadelphia Newspapers, Inc. also filed a Motion to Intervene for the Limited Purpose of Obtaining Access to Judicial Records. The Motion to Intervene, which was unopposed, was granted in a ruling from the bench during the court proceeding.

2. By Order dated August 10, 2001, the Court consolidated for all purposes *Weller v. Evanko*, No. 00–CV5660, *Mary Doe v. Evanko*, 01–CV–1538, *Nancy Doe v. Evans*, No. 01–CV–2166, and *L.H. v. Evanko*, No. 00–CV5805 with *Maslow v. Evans*, 01–CV–3636. In recent months, Mary Doe and L.H. have settled with Defendants, and the Court has entered orders dismissing with prejudice all claims advanced in Case Nos. 01–CV–1538 and 00–CV5805. All five cases were assigned to this Court on June 14, 2002, pursuant to the Eastern District of Pennsylvania's random reassignment of cases.

Although the Bureau of Professional Responsibility records apparently were disclosed through the discovery process in the five prior cases, they were not made part of the record (except for internal affairs investigations relating to the named defendants) when case dispositive motions were filed in the *Maslow* case. In Orders dated September 6, 2001 and September 26, 2001, the Honorable Stewart Dalzell denied the Pennsylvania State Police Defendants' request for a protective order and compelled production of these documents in the *Maslow* case. Judge Dalzell concluded that the public had a strong interest in the information since it related to public health and safety.

3. Evans, who is currently serving a five-to-ten year sentence at Waymart State Prison, is also named as a defendant in each of these cases.

while on duty, made improper sexual advances upon Ashley Haber, a minor. In support of her claim that the Pennsylvania State Police engaged in a widespread pattern of tolerating sexual misconduct, Haber has attached as exhibits to her Complaint more than 50 internal affairs department documents containing unrelated allegations of sexual misconduct against various troopers across the Commonwealth from 1995 through 2001.[4]

On June 6, 2003, counsel for both the Pennsylvania State Police Defendants and Haber contacted the undersigned and requested an emergency telephone conference. During that conference, counsel jointly requested that the Court seal the record and stay this matter for thirty (30) days. Counsel represented that, in addition to privacy concerns of persons identified in the reports, the temporary impoundment of Bureau of Professional Responsibility records that were attached to the Complaint would foster settlement. Counsel also requested a brief stay of proceedings to explore or continue their settlement discussions. Counsel thereafter confirmed their agreement by submitting to the Court a letter and proposed stipulation and order in which they jointly requested that the Court temporarily seal the records and stay the case.[5] Later that day, the Court signed an order staying the proceedings and sealing all records for a period of thirty (30) days only. The Order specifically provided that the suspension, stay, and seal would automatically expire after thirty (30) days.

On June 11, 2003, Philadelphia Newspapers, Inc. moved to intervene and filed the instant Motion for Access to Judicial Records and Proceedings requesting that the Court vacate its June 6, 2003 Order. In response to the Motion, the Court held a hearing on June 12, 2003, at which time all parties were invited to introduce evidence and to present oral argument with respect to the propriety of maintaining the June 6, 2003 Order.

## DISCUSSION

■ While the "existence of a common law right of access to judicial proceedings is beyond dispute," *Publicker Indus., Inc. v. Cohen,* 733 F.2d 1059, 1066 (3d Cir. 1984), a court, after balancing the need for public access to the record and the parties' desire for confidentiality, has considerable discretion in deciding whether or not to seal records. *Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 786 (3d Cir. 1994). A court must "balance the strong public interest favoring access against legitimate privacy concerns." *United States v. Criden,* 648 F.2d 814, 823 (3d Cir.1981).

■ In *Pansy,* a newspaper sought to unseal and review the terms of a settlement agreement in a civil rights action brought by a former police chief against the borough for which he worked. The Third Circuit in that case held that a district court must make findings to show that it balanced the competing public and private interests before entering such an order. The court noted that in order to seal records "good cause" must be demonstrated and that the party seeking the order bears the burden of establishing it. *Pansy,* 23 F.3d at 786–87. "Good cause is established on a showing that the disclosure will work a clearly defined serious

---

4. As set forth *infra,* all records in the case were sealed by an agreed Order dated June 6, 2003. Upon the further stipulation of counsel at the June 12, 2003 hearing, the June 6, 2003 Order was modified so as to unseal the Complaint and Exhibits 48 though 55 only.

5. The letter was attached as an exhibit to the Court's June 6, 2003 Order.

injury" to the party seeking closure or to third persons. *Id.* at 786 (quoting *Publicker Indus.*, 733 F.2d at 1071). Privacy interests may prevail where sealing records would "prevent the infliction of unnecessary or serious pain on parties who the court finds are reasonably entitled to such protection." *Id.* at 787. Preventing embarrassment is also a factor which may help to satisfy the "good cause" standard. *Id.*

■ While privacy interests are to be considered, they are diminished when the party seeking protection is subject to legitimate public scrutiny. *Id.* A court must consider "whether a party benefitting from the order of confidentiality is a public entity or official. Similarly the district court should consider whether the case involves issues important to the public." *Id.* at 788. Moreover, "where it is likely that information is accessible under a relevant freedom of information law, a strong presumption exists against granting or maintaining an order of confidentiality." *Id.* at 791.

The competing public and private interests balanced by the Court in this case include the following:

(1) The privacy interests of the parties;

(2) Whether the information is being divulged for a legitimate purpose;

(3) Whether the parties benefitting from the order are private litigants or public officials;

(4) Whether the case involves issues important to the public;

(5) Whether an order of confidentiality would promote fairness and efficiency;[6] and

(6) Whether the documents are available to the public under freedom of information laws.

*See id.* at 787–89.

■ The factors that weigh in favor of disclosure include the fact that the named defendants are public officials and that the records are of great public import. In contrast, the Pennsylvania State Police Defendants place great weight on the fact that the Bureau of Professional Responsibility records contain mere allegations, many of which were withdrawn, unfounded, or not sustained. In light of this, they claim that the internal affairs records should not be disclosed out of fairness to the accused troopers. Because the Bureau of Professional Responsibility records are General Investigation Reports only, they do not in all cases contain the ultimate dispositions. The reports do contain allegations, some of which, according to the Pennsylvania State Police Defendants, were deemed to be unsubstantiated.

A General Investigation Report generally is conducted as a matter of course when a trooper is accused of any type of wrongdoing by any individual.[7] While the offi-

**6.** Additionally, district courts may consider the interest in encouraging settlement, provided that there is a particularized showing of the need for confidentiality. *Cf. Bank of Amer. Nat'l Trust and Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 346 (3d Cir. 1986).

**7.** This Court takes judicial notice of the Pennsylvania State Police Department Directives regarding investigations relating to misconduct and the investigative assignment criteria used by the Director of Bureau of Professional Responsibility. Pennsylvania State Police

Administrative Regulation 4–25, § 25.09. The administrative regulations were attached as Exhibit 24 in Plaintiffs' Joint and Consolidated Response to Summary Judgment Motion of PSP Defendants' Summary Judgment Motion [Doc. No. 68] in *Maslow v. Evans*, No. 01–CV–3636. The Court also takes judicial notice of the fact that the directives instruct personnel receiving complaints to ensure complainants that "the confidentiality of all complaints is maintained." Pennsylvania State Police Administrative Regulation 4–25, § 25.08(G)(3).

cers who are the subject of those General Investigation Reports are public officials and the public has a strong interest in learning the nature of allegations against them, the public has less of an interest in learning the identities of the officers who have not been adjudged to have committed the alleged acts.[8] For example, if a complaint was filed and then withdrawn, or after investigation found to be not sustained or unfounded, there is less cause to reveal the cleared officer's name than if the internal affairs investigating process found evidence of wrongdoing. Rather, it is the fact of and process of the investigation that is important to the public interest in each of these cases, regardless of the results in individual investigations.

The privacy interests of the non-public persons named in the Bureau of Professional Responsibility documents (i.e., victims, witnesses, and in some reports, confidential informants) have an even greater interest in having their identities concealed. While the incidents may be extremely important to the public, the alleged victims are not responsible for the public attention that the case has received. The victims revealed most personal information in a confidential process upon assurances that their privacy would be protected. And while the Pennsylvania State Police Defendants—all of whom are public officials—are the parties seeking closure of the records, they are, at least in part, representing by default the interests of the private citizens who are alleged victims in the subject reports. Since none of the victims were notified of the pending release of the records, they were unable to participate in the June 12, 2003 hearing. Due to the procedural posture of this case, even the named defendants have not had

the opportunity to respond to the allegations in the Complaint since the pleadings, and exhibits attached thereto, have not been served upon them.

With no confidentiality limitation, all of the information provided by the reports provided by the victims, witnesses, confidential informants and Pennsylvania State Troopers under investigation would become available for public dissemination, even though they may not have any relevance to the Haber case. Such a result would likely seriously discourage future victims from reporting police misconduct and destroy the integrity of the investigative process, thereby having a chilling effect on law enforcement's ability to ferret out those who violate the public trust. Disclosure could even place certain confidential informants' safety in jeopardy.

With respect to the sealing of the records, the Court finds that the Pennsylvania State Police Defendants have not met their burden of proof and have failed to show that good cause exists for keeping the Bureau of Professional Responsibility records impounded. Accordingly, these records must be disclosed as part of the judicial record in this case. Therefore, the Court grants the Philadelphia Newspapers, Inc.'s Motion for Access to Judicial Records and Proceedings and will release the General Investigation Reports attached as Exhibits 1 though 47 (Exhibits 48 through 55 having been previously released) subject to the following additional considerations.

■ The Court further finds that good cause exists to issue a protective order that requires redaction of the names, addresses, and all identifying information of alleged victims, witnesses, and confidential

---

**8.** None of the troopers who are the subject of the reports in Exhibits 1 through 47 are named parties to the instant litigation, and thus none had the opportunity to challenge the release of the Bureau of Professional Responsibility records.

informants. The Court also finds that good cause exists to redact the names of any accused officer who was cleared of wrongdoing by virtue of a withdrawn complaint or a determination that the charges were unfounded or not sustained. This latter protection will not apply to those employees of the Pennsylvania State Police who were adjudicated of wrongdoing, either by the Bureau's own investigation and/or disciplinary process or by any other process that has caused the matter to have been previously revealed to the public, such as the officer's being a named party in a civil or criminal proceeding relating to the investigative report.

In reaching this conclusion, the Court finds crucial that the Bureau of Professional Responsibility investigative reports are not public records available under the Pennsylvania Right to Know Act, 65 P.S. §§ 66.1–66.4 (2003). The Pennsylvania freedom of information statute specifically excludes from the definition of *public record* "any report, communication or other paper, the publication of which would disclose the institution, progress or result of an investigation undertaken by an agency in the performance of its official duties . . . ." 65 P.S. § 66.1 (2003); *see also Barton v. Penco*, 292 Pa.Super. 202, 436 A.2d 1222, 1224 (1981) (refusing to order city and police commissioner to disclose the identity of unidentified complainant in investigation conducted by internal affairs unit); *Philadelphia Newspapers, Inc. v. Haverford Township*, 34 Pa. D. & C 4th 470 (1996) (refusing newspaper's request to compel police department to release records from closed internal affairs investigation).

In *Pansy*, the Third Circuit held:

where [a government entity] is a party to litigation, no protective, sealing, or other confidentiality order shall be entered without consideration of its effect on disclosure of [government] records to the public under [state and federal freedom of information laws]. An order binding [governmental entities] shall be narrowly drawn to avoid interference with the rights of the public to obtain disclosure of [government] records and shall provide an explanation of the extent to which the order is intended to alter those rights.

*Id.* at 791 (quoting Janice Toran, *Secrecy Orders and Government Litigants: "A Northwest Passage Around the Freedom of Information Act"?*, 27 Ga. L.Rev. 121, 182 (1992)). The *Pansy* court suggested that district courts may wish to grant conditional orders of confidentiality that will become inoperative if it is later determined that the information being sealed or redacted is available under a freedom of information law. *Id.*

When the Court considers the privacy interests of all individuals identified in the General Investigation Reports and the serious embarrassment that disclosure would cause, along with the procedural posture of this case, the fact that there was a joint request to seal records, and the possible chilling effect that disclosure without redaction could have, the Court finds that good cause has been established to justify a redaction order. Redaction in accordance with this Memorandum Opinion will afford the public access to these records and to the details of the investigations, while simultaneously safeguarding unsuspecting persons' rights to privacy and avoiding needless subjection to serious embarrassment and possible harm. The attached redaction order is narrowly tailored to three very compelling government interests: (1) protecting the privacy of sexual assault victims; (2) encouraging victims and witnesses to make reports of misconduct; and (3) encouraging all parties, including members of the Pennsylvania

State Police who are under investigation, to cooperate in future internal affairs investigations.

## CONCLUSION

For the foregoing reasons, Philadelphia Newspapers, Inc.'s Motion for Access to Judicial Records and Proceedings is granted subject to appropriate redaction as directed in the following Order.

## *ORDER*

AND NOW, this 17th day of June, 2003, upon consideration of Philadelphia Newspapers, Inc.'s Motion for Access to Judicial Records and Proceedings [Doc. No. 4], after a hearing thereon and for the reasons set forth in the attached Memorandum Opinion, it is hereby ORDERED that the Motion is GRANTED IN PART and DENIED IN PART.

The Court's June 6, 2003 and June 12, 2003 Orders are hereby MODIFIED. Exhibit Nos. 1 through 47 of the Complaint in the above-captioned matter are released subject to the following conditions:

(1) Prior to release of said Exhibits, counsel for all parties must complete a redaction of the names, addresses, and other identifying information of any and all alleged victims, witnesses, and confidential informants.

(2) Prior to release of said Exhibits, counsel for all parties must complete a redaction of the names, addresses, and other identifying information of any member of the Pennsylvania State Police who was the subject of a complaint that was withdrawn or determined to be unfounded or not sustained.

(3) Counsel for the Plaintiff and counsel for all Defendants are DIRECTED to file with the Court one complete set of excised reports within ten (10) days of the date of this Order.

(4) Nothing in this Order shall be construed to preclude Philadelphia Newspapers, Inc. or any other party from subsequently moving this Court for the release of the specific names and identities of persons in any internal affairs documents upon a showing that the Bureau of Professional Responsibility records are subject to disclosure under an applicable freedom of information law or that the complaint against a particular Pennsylvania State Police member ultimately was deemed to be founded.