# Korczakowski v. Hwan

C.P. of Lackawanna County, no. 01 CV 934.

*Ezra Wohlgelernter,* for plaintiffs.
*Frank J. Brier,* for defendant Hwan.
*Eugene D. Sperazza,* for defendant Kondash.

NEALON, *J.,* September 23, 2004—Presently pending for consideration is a "motion to place under seal plaintiff's petition for approval of settlement of wrongful death and survival action" in this medical malpractice litigation. Plaintiff commenced this malpractice action against his wife's gynecologist, Jung Jang Hwan M.D., and family physician, Dennis J. Kondash D.O., and alleged that they failed to timely diagnose and treat his wife's ovarian mass from March 1996 through April 1999. Plaintiff asserted that the undiagnosed ovarian mass continued to grow unabated during that three-year pe-

riod until it eventually compressed his wife's left iliac vein, thereby causing a blood clot to develop and become lodged in her lungs and resulting in her death from a pulmonary embolism.

Prior to trial, the plaintiff agreed to settle this wrongful death and survival action with all of the settlement proceeds to be paid by Dr. Hwan's primary liability insurer, the Pennsylvania Medical Society Liability Insurance Company (PMSLIC), and his additional coverage provided by the Medical Care Availability and Reduction of Error (MCARE) fund pursuant to section 712 of the MCARE Act, 40 P.S. §1303.712. No payment will be made by Dr. Kondash or his insurer. Of the total settlement payment to be paid on behalf of Dr. Hwan, more than 70 percent of those funds will be paid by the MCARE fund.

As per the language of the parties' settlement release, the plaintiff agreed to keep the details of the settlement confidential and to request that the court seal the terms of the settlement on September 9, 2004. For that reason, when the plaintiff filed his petition for approval of the settlement, he contemporaneously presented a motion to place the settlement under seal. A telephone conference was conducted with counsel for the parties on September 20, 2004, at which time the court expressed reservations about sealing from public disclosure any settlement paid by the MCARE fund with funds derived from cigarette taxes. Dr. Hwan's counsel submits that confidentiality of the settlement is necessary to protect Dr. Hwan's privacy interests and that sealing will encourage health care defendants to settle malpractice cases in the future with the assurance of confidentiality.

Pennsylvania jurisprudence has long recognized that the public has a right of access to judicial records based upon the First Amendment to the United States Constitution, see *Zdrok v. Zdrok,* 829 A.2d 697, 699-700 (Pa. Super. 2003), the common-law right to access doctrine, see *Cendant Corp. v. Forbes,* 260 F.3d 183, 192 (3d Cir. 2001), and the Pennsylvania Right to Know Act, 65 P.S. §§66.1-66.4. See *The Morning Call Inc. v. Lower Saucon Township,* 156 Pa. Commw. 397, 403-404, 627 A.2d 297, 300-301 (1993); *Davis v. Newton Township,* 101 Lacka. Jur. 42, 45 (1999). The right of access to judicial records in civil cases "promotes public confidence in the judicial system" and "helps assure that judges perform their duties in an honest and informed manner." *Cendant Corp., supra* (quoting *Leucadia Inc. v. Applied Extrusion Tech Inc.,* 998 F.2d 157, 161 (3d Cir. 1993)). Whether a document is subject to public access depends upon whether the document has been filed with the court or otherwise incorporated into a court's adjudicatory proceeding. *Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 780-83 (3d Cir. 1994); *Davis,* 101 Lacka. Jur. at 47. If a document is filed of record with the court (such as the plaintiff's settlement petition has been in the case sub judice), it is deemed to be a judicial record, *Cendant Corp., supra,* and is subject to disclosure under the right of access doctrine without the necessity of demonstrating that it is a "public record" under the Right to Know Act. *Pansy,* 23 F.3d at 781-82; *Davis, supra.*

To override the common-law right of access, the party seeking to seal a judicial record must demonstrate "good cause" justifying confidentiality, *Zdrok,* 829 A.2d at 700, and "bears the burden of showing that the material is the kind of information that courts will protect" and that

"disclosure will work a clearly defined and serious injury to the party seeking closure." *Cendant Corp.*, 260 F.3d at 194 (quoting *Miller v. Indiana Hospital,* 16 F.3d 549, 551 (3d Cir. 1994)). When determining whether the interest in secrecy outweighs the presumption of access, the court must balance the harm to the party seeking protection and the importance of disclosure to the public. *Pansy,* 23 F.3d at 787; *Davis,* 101 Lacka. Jur. at 46. Privacy interests may warrant sealing of a judicial record only to the extent necessary "to prevent the infliction of unnecessary or serious pain on parties who the court reasonably finds are entitled to such protection." *Pansy, supra; Haber v. Evans,* 268 F. Supp.2d 507, 511 (E.D. Pa. 2003).

In delineating the serious "injury to be prevented, specificity is essential." *Cendant Corp.*, 260 F.3d at 194. If the chief concern of the party seeking confidentiality is embarrassment from public disclosure, the applicant "must demonstrate that the embarrassment will be particularly serious." *Pansy,* 23 F.3d at 787 (quoting *Cipollone v. Liggett Group Inc.,* 785 F.2d 1108, 1121 (3d Cir. 1986), *cert. denied,* 484 U.S. 976 (1987)). Moreover, although the general interest in encouraging settlements based upon a particularized need for confidentiality is a factor to be considered, it is outweighed by the public's right of access if the settlement agreement involves "information important to public health and safety" or "matters of legitimate public concern." *Pansy,* 23 F.3d at 788; *Davis,* 101 Lacka. Jur. at 46-47.

Medical negligence claims, the malpractice insurance premiums being charged to physicians and hospitals, and their potential effect on access to health care in Pennsylvania have been topics of considerable public debate in

recent years and have resulted in executive, legislative and judicial action. Part of this debate has focused greater public attention on patient safety and the quality of medical care, as evidenced by the creation of the Patient Safety Authority to collect and analyze data on medical errors in Pennsylvania and to issue recommendations to medical facilities concerning health care practices and procedures in an effort to reduce the number and severity of serious events and incidents. See 40 P.S. §§1303.303-1303.304. Malpractice claims that are settled by a physician for sums exceeding the primary insurer's policy limits may be deemed relevant by a patient in deciding whether to seek or continue treatment with that physician. Therefore, the details of a malpractice settlement against a health care provider may be regarded as "information important to public health and safety" or "matters of legitimate public concern."

Furthermore, where it is likely that the information sought to be sealed is accessible under the Right to Know Act, a strong presumption exists against granting an order of confidentiality. *Pansy,* 23 F.3d at 791; *Haber,* 268 F. Supp.2d at 511; *Davis,* 101 Lacka. Jur. at 47. One of the stated purposes of the Right to Know Act is to make agencies of the Commonwealth accountable for their use of public funds. *Scranton Times v. Scranton Parking Authority,* 54 D.&C.4th 90, 101 (Lacka. Cty. 2001). Section 1(2) of the Act defines an "agency" as "[a]ny office, department, board or commission of the executive branch of the Commonwealth, . . . or any state or municipal authority or similar organization created by or pursuant to a statute which declares in substance that such organization performs or has for its purpose the performance of an essential governmental function." 65 P.S. §66.1. The

MCARE fund "is the successor in interest to the Medical Professional Liability Catastrophe Loss fund (CAT fund)" which has been described by the appellate courts as an agency of the Commonwealth. See *Pennsylvania Medical Society Liability Insurance Co. v. Commonwealth, Medical Professional Liability Catastrophe Loss Fund,* 577 Pa. 87, 842 A.2d 379, 380 (2004) (referring to the CAT fund as "an executive agency of the Commonwealth that, from 1976 through March of 2002, implemented the portions of the Health Care Services Malpractice Act, embodying Pennsylvania's statutory framework governing professional liability insurance for hospitals and physicians.") (footnote omitted); *Dellenbaugh v. Commonwealth, Medical Professional Liability Catastrophe Loss Fund,* 562 Pa. 558, 559-60, 756 A.2d 1172, 1173 (2000) (identifying the CAT fund as "an agency of the Commonwealth which is responsible for providing statutory excess liability coverage in a medical malpractice action . . . ."); *Lewinski v. Commonwealth, Medical Professional Liability Catastrophe Loss Fund,* 852 A.2d 1270, 1271 n.2 (Pa. Commw. 2004) (noting that "the Commonwealth Court has exclusive jurisdiction to hear cases involving the CAT fund, an agency of the Commonwealth."). Cf. *Mulligan v. Piczon,* 739 A.2d 605, 608 n.5 (Pa. Commw. 1999) (stating that "[t]he CAT fund is not a typical government agency."), *aff'd,* 566 Pa. 214, 779 A.2d 1143 (2001). On at least one occasion where the Commonwealth Court considered a Right to Know Act challenge involving the CAT fund, the court treated the fund as an "agency" subject to the Act. See *Legal Capital LLC v. Medical Professional Liability Catastrophe Loss Fund,* 702 A.2d 869 (Pa. Commw. 1997) (settlement records pertaining to malpractice claims made against the CAT fund are public

records under the Right to Know Act unless they are shielded from disclosure by former 40 P.S. §1301.702(c) (*repealed*)), *aff'd,* 557 Pa. 10, 731 A.2d 132 (1999). With the adoption of the MCARE Act in 2002, the MCARE fund replaced the CAT fund and is administered by the Pennsylvania Insurance Department, see 40 P.S. §§1303.702, 1303.712, 1303.713(a), which is another "department . . . of the executive branch of the Commonwealth" under 65 P.S. §66.1.

Prior to 2003, malpractice payments disbursed by the CAT fund or MCARE fund were subsidized by surcharges or assessments paid by health care providers in this Commonwealth and did not involve the expenditure of public funds. See 40 P.S. §1303.712(d); 40 P.S. §1301.701(e) (*repealed*). Act 44 of December 23, 2003, P.L. 237, established the Health Care Provider Retention Program to "provide assistance in the form of assessment abatements to health care providers for calendar years 2003 and 2004." 62 P.S. §1302-A. Under this program, which will expire on December 31, 2005, see 62 F.S. §1310-A, a medical specialist such as Dr. Hwan qualifies for an abatement of the specialist's annual MCARE assessment.[1] See 62 P.S. §1304-A(b) (1). As a result of Act 46 of December 23, 2003, P.L. 250, the Health Care Provider Retention Account is subsidized by 18.52 percent of the total excise taxes assessed upon the sale or possession of cigarettes within the Commonwealth pursuant to 72 P.S. §8206. See 72 P.S. §8211. Under the abatement program, the proceeds of the Health Care Provider Retention Account are used to

---

1. Information submitted by the physician in the written application for abatement is deemed not to be a public record under the Right to Know Act, 62 P.S. §1308-A.

pay the MCARE fund assessment for qualifying specialists like Dr. Hwan. See 62 P.S. §443.7. Additionally, effective January 1, 2004, any surcharges levied and collected under 75 Pa.C.S. §6506(a) for certain Motor Vehicle Code violations must be deposited in the MCARE fund and "used to reduce surcharges and assessments" under section 712(e) of the MCARE Act. See 40 P.S. §1303.712 (m). By virtue of these legislative enactments, more than 70 percent of the settlement proceeds that will be paid to the plaintiff in this case will be funded by cigarette taxes which are paid by members of the public and/or surcharges paid by convicted motorists.

Under section 1 of the Right to Know Act, a "public record" is defined as including any document "dealing with the receipt or disbursement of funds by an agency. . . ." See 65 P.S. §66.1. This "category of documents should be broadly construed and need only constitute records evidencing disbursement of government money." *Associated Builders & Contractors Inc. v. Pennsylvania Department of General Services,* 747 A.2d 962, 965 (Pa. Commw. 2000). As the Supreme Court of Pennsylvania has observed, the "liberal definition" of a public record in 65 P.S. §66.1 "applies to a wide range of documents that contain information relating to disbursement of public funds . . . ." *Tribune-Review Publishing Co. v. Westmoreland County Housing Authority,* 574 Pa. 661, 668, 833 A.2d 112, 116 (2003). Since the MCARE funds which will be used to pay the majority of the plaintiff's settlement with Dr. Hwan are derived from public taxes or surcharges, any documents relating to the disbursement of those settlement proceeds are clearly public records under the Right to Know Act. Cf. *Davis,* 101 Lacka. Jur. at 48.

The litigants simply have not demonstrated the requisite "good cause" to justify the sealing of this settlement involving public funds. See *Zdrok,* 829 A.2d at 701. The plaintiff's malpractice allegations regarding Dr. Hwan are already matters of public record and Dr. Hwan has not established clearly defined, serious harm that he will suffer from disclosure of the settlement. See *Tribune-Review Publishing Co. v. Westmoreland County Housing Authority,* 795 A.2d 1094, 1099 (Pa. Commw. 2002) (concluding that disclosure of the settlement agreement would not harm anyone's reputation or privacy interests since the plaintiff's "allegations against the [defendant] are already a matter of public record through the filing of the complaint."), *aff'd,* 574 Pa. 661, 833 A.2d 112 (2003). Nor have the parties shown that health care defendants will likely forego settlements of malpractice cases in the future unless their confidentiality is guaranteed. See *Pansy,* 23 F.3d at 788 n.20 ("The incentives for settling, such as saving time and expense and avoiding the publicity of a trial, are still valid whether or not the parties are allowed to seal the case files."). Even if such a risk were truly found to exist, it would not override the public's right of access to documents or information relating to the expenditure of public funds. See *Tribune-Review Publishing Co.,* 574 Pa. at 673, 833 A.2d at 119 (stating that although courts have "essentially acknowledged the possibility that disclosure might chill future attempts to resolve disputes, they generally concluded that this risk must yield to the public's right to know."); *Pansy,* 23 F.3d at 792 ("Neither the interests of parties in settling cases, nor the interests of the . . . court in cleaning their dockets, can be said to outweigh the important values manifested by freedom of information laws.").

Plaintiff has fulfilled his obligation under the parties' settlement release by filing the instant motion seeking to place this settlement under seal. In light of the fact that more than two-thirds of the settlement proceeds in this case will be paid by cigarette taxes and other public funds under the Health Care Provider Retention Program, the plaintiff's petition for approval of settlement is a "public record" under the Right to Know Act and is subject to public disclosure as a judicial record under the right to access doctrine. Accordingly, the "motion to place under seal plaintiff's petition for approval of settlement of wrongful death and survival action" will be denied.[2]

## ORDER

And now, September 23, 2004, upon consideration of the "motion to place under seal plaintiff's petition for approval of settlement of wrongful death and survival action," and the arguments presented by counsel for the parties on September 20, 2004, and based upon the reasoning set forth above, it is hereby ordered and decreed that the "motion to place under seal plaintiff's petition for approval of settlement of wrongful death and survival action" is denied.

---

2. We would note that even "if parties cannot demonstrate good cause for a court order of confidentiality over the terms of settlement, they have the option of agreeing privately to keep information concerning settlement confidential, and may enforce such an agreement in a separate contract action." *Pansy,* 23 F.3d at 788.