833 A.2d 112

**TRIBUNE–REVIEW PUBLISHING COMPANY, Appellee**

v.

**WESTMORELAND COUNTY HOUSING AUTHORITY, Appellant.**

Supreme Court of Pennsylvania.

Argued March 4, 2003.

Decided Oct. 1, 2003.

662

664

Mike Adams, for Westmoreland County Housing Authority, Appellant.

Ronald D. Barber, H. Yale Gutnick, Pittsburgh, for Tribune Review Pub. Co., Appellee.

BEFORE: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and LAMB, JJ.

## OPINION

Justice NEWMAN.

The Westmoreland County Housing Authority (Housing Authority) appeals the decision of the Commonwealth Court holding that a confidential settlement agreement between the Housing Authority's insurer and a complainant ending a federal civil rights suit is a public record subject to disclosure under the Right–to–Know Act (Act).[1] We conclude that the Commonwealth Court correctly determined that the agreement is a public record and, therefore, affirm the Order of the Commonwealth Court.

## FACTS AND PROCEDURAL HISTORY

The facts underlying this appeal are undisputed. An employee filed a civil complaint in federal district court against the Housing Authority alleging, *inter alia*, that the Executive Director of the Housing Authority subjected her to gender discrimination and a hostile work environment. The insurer, the Housing And Redevelopment Insurance Exchange (HARIE), a reciprocal insurance exchange made up of subscribing housing authorities within the Commonwealth, defended the Housing Authority and its Executive Director.

HARIE provided both defense and indemnification in the federal action even though the insurance contract between HARIE and the authority did not cover claims arising out of "discrimination pertaining to age, race, or sex." (Policy endorsement FD–1.) Not only did HARIE defend the authority, HARIE declined to collect the $1,000 deductible required by the policy.[2] Pursuant to the terms of the insurance policy, HARIE retained exclusive control of the defense. A settlement was brokered by HARIE that involved the payment of

1. Act of June 21, 1957, P.L. 390, No. 212, *as amended,* 65 P.S. §§ 66.1–66.4. The Right to Know Act was amended by the Act of June 29, 2002, P.L. 663, effective December 29, 2002. The sections of the Right to Know Act referenced in this Opinion reflect the text of the Act in existence at the time the suit was filed.

2. The Attorney–in–Fact for HARIE, Charles Volpe, testified that it was the practice of HARIE to waive collecting the deductible when an Executive Director was the target of a claim.

an undisclosed sum of money to the complainant and the execution of a reciprocal non-disclosure agreement. No copy of the confidential settlement agreement has been provided to the Housing Authority or to its Executive Director. At the time of the lawsuit, the authority paid HARIE a premium of $3,150.00 per year for coverage of one million per loss. There is no evidence on the record that the premium was raised as a result of the lawsuit or settlement.

Following the settlement and dismissal of the suit, Tribune–Review requested that the Housing Authority make the documents related to the settlement available to it for inspection. The Housing Authority refused to comply with the request because it was of the opinion that the lawsuit settlement documents were: (1) governed by a confidentiality agreement; (2) in the possession and control of HARIE; (3) did not involve the expenditure of public funds; and (4) were not "public records" under the Act. The Housing Authority also argued that it should not be required to produce the settlement documents because the confidentiality provision contained within the agreement was material to the settlement and should not be abrogated. Essentially the Housing Authority argued that the public interest in promoting settlements, coupled with the need for efficiency in conducting government business, outweighs the public interest in disclosure.

After the Housing Authority refused to supply a copy of the settlement agreement, Tribune–Review appealed the denial to the Westmoreland County Court of Common Pleas, which relied on *Morning Call, Inc. v. Lower Saucon Township,* 156 Pa.Cmwlth. 397, 627 A.2d 297 (1993), to find that the agreement was a public record subject to disclosure. The Housing Authority appealed this determination to the Commonwealth Court. The Commonwealth Court also relied on *Morning Call* to find that the settlement agreement is a public record of a public agency subject to disclosure.

The Housing Authority raises three questions in its appeal to this Court: (1) whether the Commonwealth Court erred in failing to follow, or even address, the precedent set by this

Court in *Dynamic Student Servs. v. State Sys. of Higher Educ.*, 548 Pa. 347, 697 A.2d 239 (1997); (2) whether the Commonwealth Court erred regarding the nature of the relationship between the Housing Authority and its independently licensed insurance company; an error, which it argues will potentially result in significant future litigation within the Pennsylvania judicial system; and (3) whether this Court should find that the Commonwealth Court failed to resolve the inherent conflict created by the Common Pleas decision, whereby compliance with the Act causes a breach of contract between the two parties to the settlement agreement that is the subject of the Right to Know request, when those two parties are not parties in this case. As these issues are closely related, we will address them simultaneously.

## DISCUSSION

■ The question as to whether a municipality must disclose a particular document to the public has been resolved by the General Assembly in favor of the public by balancing the fundamental public interest in disclosure against the governmental interest in confidentiality. The common law right of a party to inspect public records was codified by the General Assembly in 1957 as the Right–to–Know Act. The intent of the Act is to ensure the availability of government information to citizens of the Commonwealth by permitting access to official information. 65 P.S. § 66.2. Thus, in recognition of the fundamental nature of the public right to know, Tribune–Review had the burden of establishing that the requested material was a public record. If successful, then the Housing Authority, as the public entity, had the burden of proving that the record should not be disclosed.

In the instant matter, the Housing Authority was sued in federal court by one of its employees in a civil rights action in the Western District of Pennsylvania. The Housing Authority was represented by HARIE, which reached a settlement with the employee, prompting dismissal of the federal action.

Section 2 of the Act provides that, "Every public record of an agency shall, at reasonable times, be open for examination

and inspection by any citizen of the Commonwealth of Pennsylvania." 65 P.S. § 66.2. Further, Section 1 of the Act defines an agency as, "any State or municipal authority or similar organization created by or pursuant to a statute which declares in substance that such organization performs or has for its purpose the performance of an essential government function." 65 P.S. § 66.1(1). There is no dispute that the Housing Authority is an agency within this Commonwealth as that term is defined in the Act. We also conclude, as did the Commonwealth Court, that HARIE is not an agency within this Commonwealth pursuant to the Act. The Act goes on to define a "public record" with reference to receipt and disbursement of public funds, procurement of materials and services, and actions of the agency affecting substantive rights. 65 P.S. § 66.1(2). The only records expressly excluded from the Act's definition of "public record" are only those that come within the purview of the "investigative records" and the "statutes, orders and decrees" exclusions. 65 P.S. § 66.1(2).

■ The Act provides that "every public record of an agency" shall be available for examination. 65 P.S. § 66.2. Because the Housing Authority is an agency, as that term is defined in the Act, it is incumbent upon us to determine if the document at issue is a "public record" pursuant to that Act. The Housing Authority deems it to be a document outside the purview of the Act and unavailable for disclosure. It asserts that litigation settlement documents in the possession of the Attorney–in–Fact of its risk insurer are not "public records" within the meaning of the Act.[3]

Section 1 of the Act, 65 P.S. § 66.1, constitutes a liberal definition of a "public record" in that it applies to a wide range of documents that contain information relating to disbursement of public funds or an action of an agency that fixes the rights or obligations of individuals. The terms of the settle-

3. In *Wiley v. Woods*, 393 Pa. 341, 141 A.2d 844 (1958), this Court articulated that it was the policy of this Commonwealth, as expressed by the General Assembly, that public records be available to all members of the general populace.

ment of a federal civil rights action, which are based upon acts of the Housing Authority and its employees under color of state law, can only fall within the disclosure requirements of the Act as a "public record." This is so, notwithstanding the confidentiality agreement, inasmuch as the settlement agreement at issue involved conduct of the agency in its official capacity. Therefore, the agreement that settled the litigation involved the release from liability of a public entity by one of its employees for an act or omission of that public entity in its official capacity, and is a "public record" within the meaning of the Act. *See Morning Call, Inc. v. Housing Auth. of the City of Allentown*, 769 A.2d 1246 (Pa.Cmwlth.2001). The issue presented in the instant matter only arises where a settlement agreement is negotiated and retained by an insurer.

Numerous courts in this country have determined that a settlement document involving a public body that has acted within its official capacity contains information relating to the conduct of the public's business. *See State ex rel. Cincinnati Enquirer v. Dupuis*, 98 Ohio St.3d 126, 781 N.E.2d 163 (2002) (proposed settlement agreement between city and Dept. of Justice is public record); *Guy Gannett Publ'g Co. v. Univ. of Maine*, 555 A.2d 470 (Me.1989) (settlement agreement with former coach is public record); *Daily Gazette Co. v. Withrow*, 177 W.Va. 110, 350 S.E.2d 738 (1986), *subsequently limited by statute, Daily Gazette v. West Va. Dev. Office*, 206 W.Va. 51, 521 S.E.2d 543 (1999); *News & Observer Publ'g Co. v. Wake Co. Hosp. Sys., Inc.*, 55 N.C.App. 1, 284 S.E.2d 542 (1981) *cert. denied*, 459 U.S. 803, 103 S.Ct. 26, 74 L.Ed.2d 42 (1982); *Yakima Newspapers, Inc. v. City of Yakima*, 77 Wash.App. 319, 890 P.2d 544 (1995) (settlement of civil rights action is public record). They have recognized that there are two types of public interests mandating disclosure of such a document as a "public record" pursuant to whatever version of freedom of information statute is employed by each state. These interests are: (1) the public's right to know whether a public official or a public employee has been charged with official misconduct and (2) the financial impact upon the public of a litigation settlement that is paid either with public funds or

with insurance proceeds generated by publicly financed insurance premiums (which premiums are often adjusted based upon claims experience). For example, when faced with a similar fact pattern, a Florida court in *Miami Herald Publ'g Co. v. Collazo*, 329 So.2d 333, 338 (Fla.Dist.Ct.App.), *cert. denied*, 342 So.2d 1100 (Fla.1976) observed:

> The record indicates the trial court, at the request of the parties, ordered that the terms of the settlement agreement, which implied liability on the part of the City of Miami for the actions of one of its police officers, were not to be made public. The only reasons shown in the record for not making the settlement terms public were the preference and agreement of the parties not to do so.... [Appellant's] right to know the terms of the settlement agreement is particularly compelling here because of the nature of the issues being litigated, i.e., alleged [ ] misconduct.... These issues created a substantial monetary liability for the City and influenced its insurance rates for the future, which costs must be borne by the taxpayers. Moreover, the activities complained about are, by their very nature, newsworthy. It is particularly in matters such as these that freedom of communication should be kept open and that none of the real issues or facts become obscured.

 The terms of the settlement of a federal civil rights action, which action is based upon the conduct of the Housing Authority and its employees, contains information related to the administration of the business of the public and is, therefore, a public record. The settlement at issue is related to conduct by the agency, under color of state law, affecting the rights of one of its employees. That the litigation settlement involves "personal" as well as "official" conduct, or contains a confidentiality clause, does not vitiate the public nature of the document. The term "public record" may not be manipulated to expand the specific exemptions provided by the General Assembly.

The civil rights action in the instant matter was brought pursuant to Title VII of the Civil Rights Act of 1964 in

addition to 42 U.S.C. § 1983, *as amended,* which provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The statutory language indicates that an essential element of an action hereunder is proof that the defendant acted under color of state law. It is axiomatic that there must be state action to prevail because the statute does not reach entirely private conduct. This state action, which led to litigation, which in turn led to a settlement agreement terminating that litigation, is conduct affecting the rights of the employee involved.

 The Housing Authority argues that it did not authorize or sign the document at issue, nor did it ever see or possess the document. However, we believe that lack of possession of an existing writing by the public entity at the time of a request pursuant to the Act is not, by itself, determinative of the question of whether the writing is a "public record" subject to disclosure. A writing is within the ambit of the Act if it is subject to the control of the agency. *See, e.g., Carbondale Township v. Murray,* 64 Pa.Cmwlth. 465, 440 A.2d 1273 (1982). If the preparation of a writing, such as a litigation settlement document, by an attorney for an agency or by an attorney-in-fact for the agency's insurer is not viewed as preparation by the agency, any public entity could thwart disclosure required by the Act by having an attorney or an insurer's attorney prepare every writing that the public entity wishes to keep confidential. Hence, "agency possession or control is prerequisite to triggering any duties under the [Freedom of Information Act]." *Kissinger v. Reporters Committee,* 445 U.S. 136, 151, 100 S.Ct. 960, 63 L.Ed.2d 267 (1980). "If FOIA is to be more than a dead letter, it must necessarily

incorporate some restraint upon the agency's powers to move documents beyond the reach of the FOIA requester." *Id.* at 159, 100 S.Ct. 960 (Brennan, J., concurring and dissenting).

Pursuant to Rule 4009.1 of the Pennsylvania Rules of Civil Procedure [involving discovery in a civil action], a party is required to produce requested documents if they are within its "possession, custody or control." In construing this rule, the courts of the Commonwealth reject a narrow "physical possession" test, focusing instead on whether the subpoenaed party has a legal right to custody or control of the documents in question. Hence, if the matter before us involved compliance with a discovery request rather than a request pursuant to the Act, the Housing Authority would be unable to justify its failure to produce the settlement agreement in question.

In *Carbondale Township,* a reporter for a newspaper requested that certain officials of a township make available to him, for inspection and copying, the township's cancelled checks on the road and payroll accounts. The township officials denied the request. In affirming the decision of the trial court, which held that the cancelled checks were public records pursuant to the Act, the Commonwealth Court held that a public entity may not evade disclosure of records under its control by showing lack of actual possession of the records. The court said:

> While the Township may not have actual possession of its cancelled checks, it has control over their production in that it can authorize the bank to produce them.

*Id.* at 1274–75. Similarly, in the instant matter, while the Housing Authority may not have actual possession of the settlement agreement, it has control over its production. The Attorney–in–Fact testified that the Housing Authority was entitled to a copy of the agreement. It follows that the Housing Authority may either authorize HARIE to make the document available to Tribune–Review or require it to provide copies to the Housing Authority, which will then make the document available to Tribune–Review.

The Housing Authority further argues that, if the document is made available to Tribune–Review, then the confidentiality clause will be violated by two persons, neither of whom are a party to this action. This argument is specious given that the agreement settles the lawsuit between the Housing Authority and its employee. We note that many of our sister States have refused to enforce a provision in a litigation settlement agreement prohibiting the disclosure of the terms of the agreement where such a provision is contrary to a freedom of information statute. *See State ex rel. Findlay Publ'g Co. v. Hancock Co. Bd. of Comm'rs,* 80 Ohio St.3d 134, 684 N.E.2d 1222 (1997) (confidentiality provision of settlement agreement entered into by county in civil rights lawsuit does not preclude disclosure under Public Records Act and fact that board no longer had actual possession of settlement agreement did not relieve it of duty to disclose agreement); *Des Moines Indep. Cmty. Sch. Dist. Pub. Records v. Des Moines Register & Tribune Co.,* 487 N.W.2d 666 (Iowa 1992) (settlement agreement in civil rights action is a public record); *Anchorage Sch. Dist. v. Anchorage Daily News,* 779 P.2d 1191 (Alaska 1989) (terms of settlement with public agency may not be kept confidential); *Guy Gannett Publ'g Co. v. Univ. of Maine,* 555 A.2d 470 (Me.1989) (settlement agreement was not protected from disclosure); *Daily Gazette Co., Inc. v. Withrow, supra* (settlement of civil rights action is public record notwithstanding confidentiality agreement). Although these courts essentially acknowledged the possibility that disclosure might chill future attempts to resolve disputes, they generally concluded that this risk must yield to the public's right to know.

Next, the Housing Authority complains that the Commonwealth Court failed to follow the precedent established by this Court in *Dynamic Student Servs. v. State Sys. of Higher Educ.,* 548 Pa. 347, 697 A.2d 239 (1997). Dynamic Student Services (DSS) was a dealer in used textbooks. It asked both Millersville and West Chester Universities to supply registration and approved course material information so that it might anticipate future student needs. West Chester, after first denying the request of DDS for registration data, supplied all

the information it requested. Although West Chester did not compile course information, it procured an agreement with the campus bookstore, a non-profit organization, to supply DDS with the information requested. Millersville supplied the registration data to DDS, but refused to provide information on course materials because the school did not compile such information. DDS filed suit to obtain the information pursuant to the Act. This Court concluded that, although state universities were state agencies subject to the Acts disclosure requirements, the university was not required, under the Act, to produce information concerning required textbooks and course materials. We found that the university had no part in the ordering or selling of textbooks and neither solicited, compiled, nor retained information on course materials. Ultimately, we concluded that, the fact that the non-profit organization that operated the university bookstore was required to work closely with university in order to carry out its stated purposes, it did not lose its status as an independent entity for purposes of the disclosure requirements of the Act.

■ The Housing Authority asserts that HARIE is an independent entity, like the bookstore in *Dynamic Student Services*, and that the agreement it holds is not subject to the disclosure requirements of the Act. We disagree. The settlement agreement at issue is the product of the agency relationship that existed between the Housing Authority and HARIE. Actual agency exists when a principal, in this case the Housing Authority, and an agent, here HARIE, enter into an agency relationship. That relationship exists with the (1) manifestation by the principal that the agent shall act for him; (2) the acceptance of the undertaking by the agent; and (3) the control of the endeavor in the hands of the principal. *Basile v. H & R Block, Inc.*, 563 Pa. 359, 761 A.2d 1115 (2000). " 'The power of an agent to bind his principal is the distinctive feature of the Anglo–American agency relation.' " *Id.* at 1122 (quoting the Restatement (Second) of Agency, § 8A, cmt. a). In the instant matter, the Housing Authority contracted with HARIE to defend it in the event of suit. HARIE accepted the undertaking when it executed the contract for legal ser-

vices with the Housing Authority. Even though, in the instant matter, the Housing Authority did not agree with HARIE that the suit should be settled, HARIE stood in the shoes of the Housing Authority in prosecuting the suit and functioned as its agent. *See* Restatement (Second) of Agency § 1, cmt. e. Further, an agent "holds the power to alter the legal relations between the principal and third persons...." Restatement (Second) of Agency § 12. This is an entirely different relationship from that of the state universities and their independently-owned bookstores.

 Finally, as we have concluded that the settlement agreement is a public record, we review the exceptions provided under the Act to determine if, even though the document is a public record, its disclosure is restrained. The exceptions provide that a document is not a public record if it discloses matters relative to an investigation, is forbidden by statute, or prohibited by order of court. 65 P.S. § 66.1(2). There is no averment that disclosure is prohibited by statute or that the document is relative to an investigation. Further, in the instant matter, the federal district court in the civil rights action against the Housing Authority did not seal the terms of the settlement agreement; only the parties themselves agreed not to disclose those terms. Hence, disclosure of the settlement agreement is not restrained by the exceptions to disclosure contained in the Act. Moreover, we believe that the confidentiality clause contained in this agreement is void as against public policy to the extent that it conflicts with the text and purpose of the Act. A public entity may not enter into enforceable promises of confidentiality regarding public records.

The preparation of the settlement agreement by the Attorney–in–Fact for the Housing Authority's insurer, who represented the Housing Authority and its employees in the suit, constitutes a public duty performed by the agent of the Housing Authority. HARIE represented the Housing Authority in the settlement as its agent and, although HARIE, rather than the Housing Authority, is the signatory to the settlement agreement, its signature on that agreement is

placed there as the agent of the Housing Authority. *See generally, Neel v. Crittenden*, 353 Pa. 201, 44 A.2d 558 (1945). The fact that HARIE defended the suit on behalf of the Housing Authority, drafted the settlement agreement and signed it, or that the Housing Authority objected to the settlement does not alter the fact that it ended the lawsuit between the Housing Authority and its employee. Thus, the settlement agreement is a public document subject to disclosure pursuant to the Act.

## CONCLUSION

We recognize the important public policy served by those measures that encourage settlement. We also recognize that some litigants may be unwilling to settle unless the terms of the settlement remain confidential, and that the inability of a municipality or agency to ensure confidentiality may adversely affect its ability to negotiate a settlement. But, the specific statutory provisions upon which Tribune–Review relies reflect a policy determination by this Commonwealth that favors disclosure of public records over the general policy of encouraging settlement. The people of this state, through their elected representatives, have stated in the clearest of terms that it is more important that they have access to this type of information than that it remain confidential. However, those who wish to have a settlement agreement remain confidential are not without potential recourse; they may petition the court to have the record sealed, thus protecting it from disclosure in appropriate circumstances.

Concerning the confidentiality clause, the Supreme Court of Ohio, when faced with a similar matter, said, "a public entity cannot enter into enforceable promises of confidentiality regarding public records.... The preparation of the settlement agreement by the attorney for the county's insurer, who is representing the county and its employees in the lawsuit, constitutes a public duty performed by the county's agent." *Findlay Publ'g Co.*, 684 N.E.2d at 1225. Today we hold that a settlement agreement negotiated on behalf of an agency by its agent is a public document. We further con-

clude that a confidentiality clause contained in that agreement conflicts with public policy and the Right to Know Act and that, where a confidentiality clause subverts public policy, it cannot be enforced.

The Order of the Commonwealth Court is affirmed.

Justice LAMB files a dissenting opinion in which Chief Justice CAPPY joins.

Justice LAMB dissenting.

Because I believe the confidential settlement agreement between the Westmoreland County Housing Authority's (Housing Authority) insurer, the Housing And Redevelopment Insurance Exchange (HARIE), and a complainant is not a public record subject to disclosure under the Right to Know Law, 63 P.S. §§ 66.1, 66.2,[1] I dissent.

The version of the Right to Know Act in effect in 2000 provided that a public record is a minute, order, decision, account, voucher or contract of a public agency which fixes the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons and which is not subject to a statutory or court-ordered non-disclosure. 65 P.S. § 66.1(2); *North Hills News Record v. Town of McCandless*, 555 Pa. 51, 722 A.2d 1037, 1039 (1999).

An agency was defined as any "municipal authority or similar organization created by or pursuant to a statute which declares in substance that such organization performs or has

---

1. Act of June 21, 1957, P.L. 390, No. 212, *as amended by* the Act of June 17, 1971, P.L. 160, No. 9, 65 P.S. §§ 66.1–66.4. The legislature significantly amended the Right to Know Act in the Act of June 29, 2002, P.L. 663, No. 100, effective in 180 days, Section 7 of which provides: "If an agency receives a request for a record that is subject to a confidentiality agreement executed before the effective date of this act, the law in effect at the time the agreement was executed, including judicial interpretation of the law, shall govern access to the record, even if the record is a public record, unless all parties to the confidentiality agreement agree in writing to be governed by this act."

Since the agreement which is the subject of this dispute was executed on October 30, 2000, under Section 7 access to the record is governed by the Right to Know Law in effect at that time.

for its purpose the performance of an essential governmental function." 65 P.S. § 66.1(1).

Pursuant to the Right to Know Act, to be available for inspection, the records must be both public records and records of a state agency. *Sapp Roofing Co., Inc. v. Sheet Metal Workers' International Association,* 552 Pa. 105, 713 A.2d 627, 629 (1998).

In *Dynamic Student Services v. State System of Higher Education,* 548 Pa. 347, 697 A.2d 239 (1997), this Court distinguished the records in the hands of the bookstores from the cancelled township checks in the hands of the bank in *Carbondale Township v. Murray,* 64 Pa.Cmwlth. 465, 440 A.2d 1273 (1982). There, the Commonwealth Court correctly held that the township retained control over the cancelled checks and could authorize the bank to produce them. The records sought in *Dynamic Student Services* were not those of the university but were sent directly to the bookstores. Since the bookstores were not public agencies they were, therefore, not in possession of the records of a state agency. *Dynamic Student Services,* 697 A.2d at 242 n. 4.

The Housing Authority's argument that the Commonwealth Court failed to apply the holding of *Dynamic Student Services* is well taken. In *Dynamic Student Services* this court held that records of an independent entity do not become public records solely because that entity works closely with a public agency to carry out its stated purposes.[2] Likewise in this case, the records of HARIE do not become public records solely because of HARIE's relationship with public agencies. A greater involvement is required, such as the expenditure of funds or the underwriting of liability found in *Morning Call, Inc. v. Lower Saucon Township,* 156 Pa.Cmwlth. 397, 627 A.2d 297 (1993).

In *Morning Call,* the settlement was subject to a Five Thousand Dollar ($5,000) deductible, payable by the township. *Morning Call,* 627 A.2d at 299. More importantly, in *Morn-*

---

**2.** By its holding today, the majority appears to have overruled *Dynamic Student Services sub silentio.*

*ing Call,* the township was a signatory to the Settlement Agreement, and would have been obligated for the full amount had its carrier failed to pay. *Id.* at 300. Thus, the agreement in *Morning Call* required the disbursement of public funds. 65 P.S. § 66.1(2).

The Ohio, West Virginia, and Washington cases that the majority cites all involve settlement agreements to which the public body was a signer. In this case, the Housing Authority did not see or sign the agreement. It is also true that in this case there was no evidence presented that the agreement had any financial impact on the Housing Authority.

The Housing Authority's second question, whether the relationship between the Housing Authority and HARIE makes HARIE a public agency, is also answered in the negative by this Court's decision in *Dynamic Student Services.* HARIE is a reciprocal insurer for housing authorities and, as a consequence, works closely with the public agencies it insures. HARIE does not become a public agency by association any more than the independent bookstores became public agencies because they supplied services to students at public universities. *Dynamic Student Services,* 697 A.2d at 242.

In *Pennsylvania State University v. Derry Township School District,* 557 Pa. 91, 731 A.2d 1272, 1274 (1999), this Court held that "[t]he mere funding of an institution does not make it an agency or instrumentality of the state.... The Commonwealth funds countless programs and institutions, but few of these are so closely aligned with the government as to be agencies thereof ... [A]n entity's status as an agency or instrumentality varies, depending on the issue for which the determination is being made." *See also Community College of Philadelphia v. Brown,* 544 Pa. 31, 674 A.2d 670, 672 (1996) (holding that community colleges are not subject to the Right to Know Law because they are not "agencies" as that term is defined in the act).

The test for public agency is whether the entity is "[a] municipal authority or similar organization created by or pursuant to a statute which declares in substance that such

organization performs or has for its purpose the performance of an essential governmental function." 65 P.S. § 66.1. There is no language from which it could be inferred that HARIE is performing an essential government function which would make it a public agency for the purposes of the Right to Know Law.

There is no suggestion in the case that either the creation of HARIE or the agreement was designed to shield public records from public view. When a public agency is not a party to, and no public funds are expended on account of, a settlement agreement that is maintained exclusively in the records of the agency's insurer then that agreement should not be deemed a public record.

Accordingly, I would reverse the Order of the Commonwealth Court.

Chief Justice CAPPY joins this dissenting opinion.