**KNIGHTSTOWN BANNER, LLC,**
Appellant–Plaintiff,

v.

**TOWN OF KNIGHTSTOWN,** Governmental Insurance Managers, Inc. and Governmental Interinsurance Exchange, Appellees–Defendants.

No. 33A04–0504–CV–200.

Court of Appeals of Indiana.

Dec. 13, 2005.

Rehearing Denied March 13, 2006.

Kurt A. Webber, Kurt A. Webber, P.C., Indianapolis, for Appellant.

Michael A. Wilkins, Brian J. Paul, Ice Miller, Indianapolis, for Amicus Curiae.

David L. Copenhaver, Joel E. Harvey, Hayes Copenhaver Crider, New Castle, Stephen J. Peters, Stewart & Irwin, Indianapolis, Steven D. Pearson, Omar S. Odland, Meckler Bulger & Tilson, LLP, Chicago, IL, for Appellees.

**OPINION**

RILEY, Judge.

## STATEMENT OF THE CASE

Appellant–Plaintiff, the Knightstown Banner, LLC. (the Banner), appeals the trial court's denial of its Motion for Summary Judgment in favor of Appellees–Defendants, Town of Knightstown (Knightstown), Governmental Insurance Manager, Inc. (GIM) and Governmental Interinsurance Exchange (GIE). The Hoosier State Press Association Foundation filed an *amicus curiae* brief in support of the Banner.

We reverse and remand with instructions.[1]

## ISSUE

The Banner raises three issues on appeal, one of which we find dispositive and which we restate as follows: Whether documents created by the attorney appointed by Knightstown's reciprocal insurer, memorializing the terms and conditions of a settlement of a civil rights lawsuit brought by a former employee against Knightstown, are public records under the Indiana Access to Public Records Act (APRA).

## FACTS AND PROCEDURAL HISTORY

This case arises out of three separate requests from the Banner to Knightstown, GIM, and GIE, each seeking to inspect and copy a settlement agreement that resolved a civil rights lawsuit filed on November 25, 2002 in the United States District Court for the Southern District of Indiana, by Gigi Steinwachs (Steinwachs) against Knightstown, members of its police department, and other third parties. In her lawsuit, Steinwachs alleged sexual harassment, physical assault, and intimidation during her employment as a dispatcher with the Knightstown police department. Besides Knightstown's regular town counsel (Regular Town Counsel), an attorney retained by Knightstown's reciprocal insurer, GIE (Retained Town Counsel), also participated in the civil rights lawsuit.

GIE is a reciprocal insurer organized under the laws of Illinois, and authorized to conduct insurance business in Indiana. It is a reciprocal interinsurance program whereby governmental entities enter into contracts of indemnity with each other

---

1. Oral arguments were held on November 10, 2005 in the Court of Appeals Courtroom. We hereby congratulate counsel on their excellent briefs submitted in this case and their eloquent oral arguments.

through their common attorney-in-fact, GIM. GIE's insureds, known as subscribers, are exclusively local governmental entities, of which seventy-three percent are located in Indiana. At the time of the initiation of the civil rights lawsuit, Knightstown was insured by GIE. Under the terms of the policy, GIM, as the appointed true and lawful attorney of [Knightstown], had the right to

> pay those sums that [Knightstown] becomes legally obligated to pay as "damages" because of injury caused by "Designated Wrongful Employment Practices": to which this Coverage Part applies. [GIM] will have the rights and duty to defend any insured against a "suit" seeking these damages from [Knightstown], and [GIM] will have the right to administer, manage, and control the defense of [Knightstown] ... [GIM] may at our discretion investigate any "occurrence" and settle, in whole or in part, any "claim" or "suit" that may result.

(Appellant's App. p. 543).

On October 21, 2003, Steinwachs, individually and through counsel, and Knightstown, through Regular Town Counsel and Retained Town Counsel, resolved the civil rights lawsuit in a settlement conference. Following the conference, the district court ordered the filing of a motion to dismiss or stipulation of dismissal within thirty days because of the settlement between the parties. Pursuant to the terms of the settlement, Knightstown was to directly pay Steinwachs $5,000.00 in partial payment of the agreed compensation. However, the Town Council President refused to further discuss the terms of the settlement because of a confidentiality provision which would result in additional compensation for Steinwachs if breached.

On or about November 13, 2003, Steinwachs filed a motion to extend the time to file a stipulation of dismissal in the civil rights lawsuit. On or about November 18, 2003, the district court granted Steinwachs' motion and extended the time to file the stipulation until "ten days after receipt of remaining funds." (Appellant App. p. 85). Thereafter, on or about December 9, 2003, Steinwachs' counsel and Retained Town Counsel filed a stipulation to dismiss. That same day, the district court dismissed the civil rights lawsuit without sealing the settlement agreement.

On October 29, 2003, pursuant to APRA, the Banner submitted its first request to Knightstown seeking to inspect a copy of the settlement agreement. Approximately two weeks later, on November 10, 2003, the Banner submitted identical requests to Knightstown and GIE to receive a copy of the settlement agreement, or in the alternative in the event the settlement was not reduced to writing, "complete copies of any and all documents which reveal the amount of money either already paid or to be paid to [Steinwachs] ... as well as any and all documents which set forth any nonmonetary terms and conditions of the settlement agreement." (Appellant's App pp. 76–77). Both Knightstown and GIE denied the request.

On May 21, 2004, the Banner filed a Verified Complaint against Knightstown, GIE, and GIM alleging a violation of APRA, a violation of the common law right to inspect public records, and a violation of article I, §§ 1 and 9 of the Indiana Constitution. On January 14, 2005, the Banner filed its Motion for Summary Judgment on All Counts of the Complaint. Thereafter, on February 16, 2005, Knightstown, GIE, and GIM filed cross-motions for summary judgment. On April 6, 2005, after a hearing, the trial court denied Banner's motion for summary judgment but granted Knightstown's, GIE's, and GIM's cross-motions for summary judgment.

The Banner now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *American Family Mut. Ins. Co. v. Hall,* 764 N.E.2d 780, 783 (Ind.Ct. App.2002), *trans. denied.* Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id.* In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id.* The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *Id.* Accordingly, the grant of summary judgment must be reversed if the record discloses an incorrect application of the law to the facts. *See Ayres v. Indian Heights Volunteer Fire Dep.'t, Inc.,* 493 N.E.2d 1229, 1234 (Ind.1986).

### II. *Analysis*

The Banner contends that the trial court erred as a matter of law by denying its motion for summary judgment. Specifically, the Banner asserts that due to the fiduciary relationship that exists between Knightstown and Retained Town Counsel, who was retained by Knightstown's insurer, GIE, the settlement agreement in Retained Town Counsel's possession is in effect received, retained, or maintained by Knightstown. As a result, the agreement must be considered a public record, which can be produced under APRA for the Banner's inspection.

The APRA, codified at Ind.Code § 5–14–3–1 *et seq.,* allows any person to inspect and copy the records of any public agency. Although the openness of public agencies can be subject to certain exceptions, Indiana's General Assembly stated APRA's purpose as:

> A fundamental philosophy of the American constitutional form of representative government is that government is the servant of the people and not their master. Accordingly, it is the public policy of the state that all persons are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and employees. Providing persons with the information is an essential function of a representative government and an integral part of the routine duties of public officials and employees, whose duty it is to provide the information. This chapter shall be liberally construed to implement this policy and place the burden of proof for nondisclosure of a public record on the public agency that would deny access to the record and not on the person seeking to inspect and copy the record.

I.C. § 5–14–3–1.

The overarching question of whether the settlement agreement drafted by an attorney retained by a public agency's insurance company can be considered a public record, and therefore be subject to the requirements of APRA, presents us with an issue of first impression in Indiana and compels us to interpret the relevant provisions of the statute. It is well established that statutory interpretation is a question of law reserved for the court and is reviewed *de novo. Bobrow v. Bobrow,* 810 N.E.2d 726, 732 (Ind.Ct.App.2004). In this respect, the guiding principles of stat-

utory construction of APRA are known. *Indianapolis Convention & Visitors Association, Inc. v. Indianapolis Newspapers, Inc.*, 577 N.E.2d 208, 212 (Ind.1991). Courts must construe APRA with its purpose and scope in mind. *Id.* APRA is to be examined and interpreted as a whole, giving words their common and ordinary meaning and not overemphasizing a strict, liberal or selective reading of individual words. *Id.*

Although it is true that we must look to legislative intent when construing a statute with ambiguous language, "[i]f the language of a statute is clear and unambiguous it is not subject to judicial interpretation." *Journal Gazette v. Board of Trustees of Purdue University*, 698 N.E.2d 826, 828 (Ind.Ct.App.1998) (citing *Town of Merrillville v. Merrillville Conservancy Dist.*, 649 N.E.2d 645, 649 (Ind. Ct.App.1995), *reh'g denied, trans. denied* )). When construing public disclosure laws this court has held that although the exceptions should be construed strictly, this does not mean that expressed exceptions specified by the legislature are to be contravened. *Id.*

■ The Banner focuses on the argument that a settlement agreement created, received, retained, or maintained by Retained Town Counsel, Knightstown's fiduciary agent, is in effect created, received, retained, or maintained by Knightstown. While all parties concede that Knightstown is a public agency pursuant to the provisions of APRA,[2] Knightstown, on the other hand, contends that the settlement agree-

ment is not a public record, as defined in APRA, because it is retained by GIE/GIM's attorney and is not now and never was in the possession of Knightstown.

A public record under APRA is defined as "any writing, paper, report, study, map, photography, book, card, tape recording, or other material that is created, received, retained, maintained, or filed by or with a public agency and which is generated on paper, paper substitutes, photographic media, chemically based media, magnetic or machine readable media, electronically stored data, or any other material, regardless of form or characteristics." I.C. § 5–14–3–2(m). In support of their respective arguments, both parties rely on APRA's language *"created, received, retained, maintained, or filed by or with a public agency."*

Referencing this language, the Banner asserts that under Indiana law, a lawyer retained by a client's insurer owes the insured client the same fiduciary duty as if the insured client had directly engaged the lawyer. Building upon this assertion, the Banner argues that accordingly, any settlement agreement in the possession, custody, or control of Retained Town Counsel can be considered "retained" or "maintained" by Knightstown while it is within its counsel's possession because the documents are Knightstown's property.

In support of its argument, the Banner relies on *Cincinnati Ins. Co. v. Wills*, 717 N.E.2d 151 (1999). In *Wills*, our supreme court decided the issue whether an insur-

---

2. APRA defines a public agency, in pertinent part, as
  (1) Any board, commission, department, division, bureau, committee, agency, office, instrumentality, or authority, by whatever name designated, exercising any part of the executive, administrative, judicial, or legislative power of the state.

(2) Any:
  (A) county, township, school corporation, city, or town, or any board, commission, department, division, bureau, committee, office, instrumentality, or authority of any county, township, school corporation, city or town;
  . . .

ance company engages in the unauthorized practice of law when it employs in-house counsel to represent its insureds. *Id.* at 153. In its discussion section, the *Wills* court focused on the rules of professional conduct, and stated that "[u]ltimately, all attorneys are bound by their professional obligations to place the interests of their policyholder-client ahead of their own if pressure from an employer or a co-client insurer conflicts with those of the policyholder." *Id.* at 163. After a detailed analysis, the supreme court held in sum that attorneys employed by insurance companies may represent insureds under circumstances and to the extent permitted by their ethical obligations defined in the Admission and Discipline Rules and the Rules of Professional Conduct. *Id.* at 165.

Accordingly, in light of the *Wills* decision, even though Retained Town Counsel was appointed by GIM in accordance with the terms of the insurance policy between GIE and Knightstown, Retained Town Counsel was not prevented by his ethical obligations to represent both Knightstown and GIE. In effect, our review of the record establishes that Retained Town Counsel unequivocally testified that, in his opinion, he represented Knightstown and not GIE during the settlement negotiations:

> I don't settle cases for [GIE]. I represent defendants. I represent individuals and I represent governmental entities. In the [federal harassment case], for instance, I represented [Knightstown] plus seven individuals sued for both compensatory and punitive damages. I did not represent [GIE] and I never have.

(Appellant's App. p. 117).

■ Although all parties to the instant case allege that only Retained Town Counsel created and kept a copy of the settlement agreement, we notice that Knightstown itself was under a statutory duty to keep a copy of the settlement agreement. Under the statutory provisions, once a public authority is actively involved in negotiating a contract through counsel, it has an official duty to demand that these documents are delivered to the town. The record reflects that the settlement with Steinwachs was approved during a public meeting, settling the federal lawsuit for four thousand dollars more than Knightstown's deductible under the insurance policy. Pursuant to I.C. § 36–5–4–4(a)(2),[3] the treasurer could not have paid those funds absent submission of a properly processed claim. Furthermore, Indiana law requires that such a claim be fully itemized and certified by the town's clerk/treasurer as "true and correct" before payment is made. I.C. § 36–5–4–6(b)(1). And thereafter, in accordance with I.C. § 5–11–10–2(a), the clerk/treasurer was required to carefully preserve the documents concerning the claim as part of the official records of the office. Nevertheless, in her affidavit, Knightstown's Clerk–Treasurer conceded that Knightstown was not in possession of "any settlement agreement or other document revealing sums that have been

---

**3.** Indiana Code § 36–5–4–4(a)(2) provides that "the town legislative body or a board of the town may allow a claim: . . .(2) only if the claim was filed in the manner prescribed by I.C. § 5–11–10–2 at least five (5) days before the meeting."

Indiana Code § 5–11–10–2 states in pertinent part that:

(a) Claims against a political subdivision of the state must be approved by the officer or person receiving the goods or services, be audited for correctness and approved by the disbursing officer of the political subdivision, and, where applicable, be allowed by the governing body having jurisdiction over allowance of such claims before they are paid. If the claim is against a governmental entity . . ., the claim must be certified by the fiscal officer.

paid ... to [Steinwachs] in connection with the settlement and dismissal" of the lawsuit. (Appellant's App. p. 187).

Moreover, in light of APRA's purpose of openness, the general assembly crafted the definition of public documents in broad terms. To prevent an agency from frustrating this purpose, the general assembly, in I.C. § 5–14–3–3(g), elected to prohibit a public agency from contracting for storage and copying services that would unreasonably impair access to the public. Thus, if a public agency cannot unreasonably impair access through contractual storage arrangements, accepting Knightstown's argument would amount to a tortured interpretation of APRA whereby private attorneys would be permitted to ensconce government contracts within their firm's file room and completely deny the public access.

As compelling as Knightstown might find its own arguments, we are not persuaded. Knightstown focuses on the argument that the definition of public record does not include documents created by private individuals acting on behalf of a public agency. This distinction is without merit. There is no doubt that although Retained Town Counsel is a private individual, and not itself a public authority under APRA, he created, maintained, and retained custody of the settlement agreement as attorney for Knightstown, which is a public authority. Accordingly, the settlement agreement was created and accepted, and released Knightstown from liability during the course of Retained Town Counsel's representation of the public authority, and was, in effect, the culmination of that representation. If Knightstown's argument is accepted, public scrutiny of most, if not all, settlement agreements involving public authorities would be barred. This result would effectively close the openness mandated by Indiana's public records law.

Our decision today is in line with our sister states. In *Tribune–Review Publishing Company v. Westmoreland County Housing Authority*, 574 Pa. 661, 833 A.2d 112 (2003), the Tribune Review sought disclosure of a confidential settlement agreement between a former housing authority employee and a reciprocal insurer resolving a civil rights action brought by the employee against the housing authority. *Id.* at 114–16. The housing authority did not authorize or sign the settlement agreement, nor did it ever see or possess the document. *Id.* at 118. The Pennsylvania Supreme Court held that "[t]he fact that [the insurance company] defended the suit on behalf of the housing authority, drafted the settlement agreement and signed it, ... does not alter the fact that it ended the lawsuit between the housing authority and its employee. Thus, the settlement agreement is a public document subject to disclosure...." *Id.* at 120.

Likewise, in *Journal /Sentinel, Inc. v. Sch. Bd. of the Sch. Distr. of Shorewood*, 186 Wis.2d 443, 521 N.W.2d 165 (App. 1994), the Journal sought the release of a Memorandum of Understanding settling litigation between the school board and its former superintendent. *Id.* at 167. During the settlement negotiations, the school board and its former superintendent directed their respective attorneys to execute this memorandum on their behalf and to file one duplicate original in each of their respective professional offices. *Id.* In opposing the Journal's public record request, the school board argued that the memorandum was drafted by private counsel and ensconced in its files. *Id.* at 169. In the eyes of the Wisconsin court of appeals, "[counsel's] creation and retention of custody of the Memorandum of Understanding is attributable to the school board

to the same extent as if the documents were created or kept by school board personnel. It is a record to disclosure under the public-records law." *Id.* at 171. *See also Findlay Publ'g Co. v. Hancock Co. Bd. of Comm'ns,* 80 Ohio St.3d 134, 684 N.E.2d 1222, 1225 (1997) (holding that government entities cannot conceal public records by delegating a public duty to a private entity).

Based on the evidence before us, we conclude that the settlement agreement created by an attorney retained by a public agency's insurance company to represent the public authority can be considered a public record, and therefore be subject to the requirements of APRA. In the instant case, the agreement that settled the litigation between Steinwachs and Knightstown was not only created by Retained Town Counsel, but thereafter, received and retained in his files. The fact that Knightstown never signed or received a copy of the settlement agreement is immaterial; delegating the responsibilities of creating, receiving, and retaining the settlement agreement to outside counsel does not thereby remove the document from the statute's definition of public document.

Furthermore, not only did the settlement agreement involve the release from liability by a public authority through its counsel for an act or omission of that public authority in its official capacity and is a public record within the meaning of APRA, the settlement of Steinwachs' suit obviously involved the expenditure of public money—either directly or indirectly. Taxpayers of a community have the right to know how and why their money is spent. Therefore, mindful of the APRA's purpose of openness, we do not allow a public authority to thwart disclosure required by APRA by having an attorney or an insurer's attorney prepare every writing that the public authority wishes to keep confidential. Accordingly, we reverse the trial court's judgment and remand this case with instructions for the trial court to enter an Order mandating Knightstown to receive the settlement agreement from Retained Town Counsel and to deliver to the Banner a copy of its settlement agreement with Steinwachs.

### CONCLUSION

Based on the foregoing, we find that the agreement created by the attorney appointed by Knightstown's insurance company, memorializing the terms and conditions of a settlement of a civil rights lawsuit brought by a former employee against Knightstown, is a public record under APRA. We reverse and remand to the trial court with instructions to enter an Order mandating Knightstown to receive the settlement agreement from Retained Town Counsel and to deliver to the Banner a copy of its settlement agreement with Steinwachs.

Reversed and remanded with instructions.

BAKER, J., and SHARPNACK, J., concur.