**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4411
_____

PAUL BRYAN; BONNIE BRYAN, Husband and Wife,
individually and as Parents and Natural Guardians
on behalf of their minor child, KB, and KB;
KENNETH BRYAN

v.

ERIE COUNTY OFFICE OF CHILDREN AND YOUTH;
PAUL CANCILLA, individually and as an employee of Erie
County Office of Children and Youth; CARMEN E. MERRIT,
individually and as an employee of Erie County Office of Children and Youth;
RENIE SKALKO, individually and as an employee of Erie County Office of
Children and Youth; CINDY BAXTER, individually and as an employee of
Erie County Office of Children and Youth; CINDY LEWIS, individually
and as an employee of Erie County Office of Children and Youth;
BRIGITTE SULLIVAN, individually and as an employee of Erie County
Office of Children and Youth; JOHN PETULLA, individually and as an
employee of Erie County Office of Children and Youth DPW Bureau of
County Children and Youth Programs

Kenneth Bryan,
Appellant
_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(No. 1-03-cv-00259)
District Judge:  Honorable J. Frederick Motz

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 22, 2016
_____

Before:  FISHER, CHAGARES, and BARRY, Circuit Judges.

(Filed: February 5, 2016)
_____

OPINION[*]
_____

CHAGARES, Circuit Judge.

This appeal concerns an attempt by the plaintiff to avoid what turned out to be an ill-advised "high-low" settlement agreement (the "Agreement"). Kenneth Bryan brought suit against Erie County Office of Children and Youth and several of its employees under 42 U.S.C. § 1983 for violation of his constitutional due process rights. During trial, Bryan and the defendants entered into the Agreement, which capped Bryan's recovery at $2,700,000 but guaranteed him a minimum of $900,000, and entitled Bryan to the amount of any jury verdict within that range. The jury returned a verdict for $8,654,769, well over the Agreement's ceiling.

Bryan now appeals the District Court's enforcement of the Agreement, on the ground that the defendants allegedly publicly disclosed its terms several weeks after the verdict and thus materially breached. Because the Agreement did not require confidentiality after the verdict, we will affirm.

I.

We write solely for the parties' benefit and recite only the facts essential to our disposition. Bryan brought suit against Erie County Office of Children and Youth and

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

several of its employees after they were involved in placing in his foster parents' home a foster brother who sexually abused Bryan. Only claims against Erie County employees Cindy Baxter and Renie Skalko proceeded to trial; the claims against Erie County Office of Children and Youth and other employees were resolved on summary judgment. During trial, Bryan and all the original defendants entered into the "high-low" settlement Agreement that capped Bryan's recovery at $2,700,000 but guaranteed him a minimum of $900,000, regardless of the jury's verdict, and entitled Bryan to the amount of any verdict within that range. The Agreement provided that it would be confidential "'subject to the duties, if any, of the [Erie County Office of Children and Youth] and/or its employees under the Pennsylvania Right to Know Act,'" but also that the parties would "'put this Agreement on the record with the court to memorialize the same following entry of the verdict or court order disposing of the case.'" Defs. Br. 15 (quoting Agreement ¶¶ 16, 18). The Agreement also declared that

> [i]t is the intention of the parties to settle this matter once and for all within the parameters of this Agreement and accordingly, no litigation shall extend beyond the jury verdict, molding the verdict to the extent necessary based upon the terms of this Agreement, and any other matters necessary to bring the trial phase to a conclusion.

Defs. Br. 14-15 (quoting Agreement ¶ 7). The parties agreed not to file any Federal Rule 50 motions or to appeal.

The jury returned a verdict of $8,654,769 on June 1, 2012. The parties and the judge then had the following discussion in chambers:

THE COURT: All right, we're on the record.

3

DEFENSE COUNSEL: I'd like to make an oral motion to mold the verdict consistent with our agreement to $2.7 million, consistent with the terms set forth therein.

THE COURT: I think the best way to handle it is to file a motion, style it motion to mold — which incorporates all the material terms of your agreement that you both signed. Just file a written motion to mold and I'll go ahead and sign it.

DEFENSE COUNSEL: Without the agreement attached to it?

THE COURT: It seems to me — was the agreement actually typed out?

DEFENSE COUNSEL: Yes.

THE COURT: I would include it.

DEFENSE COUNSEL: Fine, I'll file it under seal.

THE COURT: You can't file it under seal.

BRYAN COUNSEL: I'm bound by the contract. You have it on record. If you file a motion to mold it's going to be public anyway. I'm willing to do whatever you want to do. You can decide later.

THE COURT: Put it this way, without an explanation on record why I am molding the verdict, I'm not just going to go ahead and reduce the verdict by that much. You should do one of two things. I don't care what you do. But either set forth within your motion the material terms of your high/low agreement, which I think it probably the easier way to do it, if there is not any dispute —

BRYAN COUNSEL: It's not disputed. I'm bound by contract. It's a whole separate contractual matter, you don't even need to do a motion to mold. I've already entered into the contract, whatever you want to do.

THE COURT: He is obviously going to honor the terms. What is the high of the agreement?

DEFENSE COUNSEL: $2.7 million.

THE COURT: Just file a motion that makes it clear why you are molding, filing a motion to mold the verdict.

BRYAN COUNSEL: You can if you want to, but that's going to make it public.

4

THE COURT: Otherwise — let me put it this way. It's got to be clear why the verdict is being reduced.

DEFENSE COUNSEL: Why don't we do this. We have an agreement for a high/low that we previously signed, we're going to issue checks for $2.7 million to you. If you accept that, once we've issued the checks, we will file a stipulation of dismissal.

BRYAN COUNSEL: That's fine.

THE COURT: All right, we're done.

Appendix ("App.") 631-33. That same day, June 1, the District Court entered judgment on the $8,654,769 verdict.

On June 20, the defendants sent Bryan $2,700,000, the amount owed under the Agreement. Bryan informed the defendants that he was "able to accept the checks as only partial payment on the judgment" because, as Bryan alleged, the defendants had breached the Agreement's confidentiality provision by disclosing its terms to its public auditors. App. 140. Bryan refused to file a stipulation of dismissal.

Baxter and Skalko then filed a motion, which did not include the Agreement's terms, asking the District Court to mark the judgment satisfied pursuant to Federal Rule 60. Baxter and Skalko also moved for leave to file under seal a motion pursuant to Federal Rule 59, which Baxter and Skalko styled as a "Motion to Alter or Amend Judgment Under Rule 59(e), or in the Alternative, Motion for New Trial Under Rule 59(a)(1)(A)." App. 127-39.

In a conference regarding these motions, the District Court denied the motion to file under seal and "direct[ed] that everything [be] filed of record . . . [b]ecause this is a public entity . . . [a]nd the agreement they entered into and how they may be required or

5

not be required to pay . . . is a matter in the interest of the public." App. 643. The District Court continued, "[t]his high/low agreement . . . notwithstanding the confidentiality between the two of you, in all likelihood is a matter of public record . . . in one form or fashion." App. 646. "[S]ince a dispute has grown up around the terms and conditions of [the] agreement . . . that dispute is properly put on the record," concluded the District Court. App. 646-47. Baxter and Skalko responded by publicly filing their Rule 59 motion and attaching the Agreement.

On July 3, Bryan filed a motion to pursue discovery on the asserted breach of the Agreement's confidentiality provision. The District Court ultimately held that it lacked jurisdiction to resolve the dispute over the enforceability of the Agreement.

Baxter and Skalko appealed. We held that the District Court did have jurisdiction to decide Skalko and Baxter's Rule 60 motion for relief from the judgment, and reversed and remanded. Bryan v. Erie County Office of Children & Youth, 752 F.3d 316 (3d Cir. 2014). And we left for the District Court to decide whether Baxter and Skalko breached the Agreement. Id. at 323.

On remand, the District Court granted Baxter and Skalko's Rule 60 motion to satisfy the judgment, finding the Agreement enforceable. The District Court reasoned that the Agreement's provision for placing the Agreement "on the record with the court" after the verdict "clear[ly] and unambiguous[ly]" allowed for public disclosure. App. 3. That conclusion was in line with "sound public policy." App. 3. Accordingly, Baxter and Skalko did not breach by attaching the Agreement to their publicly filed Rule 59 motion. The District Court also determined that Bryan's refusal to accept the $2,700,000

6

payment as satisfying the judgment materially breached the Agreement and Baxter and Skalko were then free to file their post-trial motions and appeal.

Bryan timely appealed.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1331. We have appellate jurisdiction under 28 U.S.C. § 1291. "The construction of an unambiguous contract is a matter of law for the court and therefore is subject to plenary review." U & W Indus. Supply, Inc. v. Martin Marietta Alumina, Inc., 34 F.3d 180, 185 (3d Cir. 1994).

## III.

"The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties." Murphy v. Duquesne Univ. Of The Holy Ghost, 777 A.2d 418, 429 (Pa. 2001). The intent of the parties is found by considering the whole instrument "taken together." Id. Only where a contract is ambiguous may extrinsic evidence be examined to determine intent. Id. And "[a] contract contains an ambiguity if it is reasonably susceptible of different constructions." Id. at 430 (quotation marks omitted).

At issue in this appeal is the operation of the Agreement's two provisions reading: (1) "'[t]his Agreement shall be CONFIDENTIAL subject to the duties, if any, of the [Erie County Office of Children and Youth] and/or its employees under the Pennsylvania Right to Know Act'" and (2) "'[t]he parties herein will put this Agreement on the record with the court to memorialize the same following entry of the verdict.'" Defs. Br. 15 (quoting Agreement ¶¶ 16, 18).

7

We first examine the confidentiality provision by itself. The Commonwealth of Pennsylvania has made a "policy determination . . . that favors disclosure of public records over the general policy of encouraging settlement." Tribune-Review Pub. Co. v. Westmoreland Cty. Hous. Auth., 833 A.2d 112, 120-21 (Pa. 2003). Specifically, Pennsylvania's Right-to-Know Law provides that "a public record . . . shall be accessible for inspection and duplication" upon a written request. 65 P.S. §§ 67.701, 67.702. Settlement agreements that involve public entities such as the Erie County Office of Children and Youth are considered public records. Tribune-Review, 833 A.2d at 121. Thus, absolute confidentiality provisions in such agreements are unenforceable. Id.

The parties here acknowledged this public policy in their Agreement and accordingly included what can only be considered a "partial" confidentiality provision. The Agreement's partial confidentiality term explicitly provides that it is subject to the duties of Erie County Office of Children and Youth and its employees "under the Pennsylvania Right to Know Act." In other words, if a written request is made under the statute for this Agreement, the Agreement must be publicly disclosed. The confidentiality provision is therefore far from absolute. Likely due to this limited ability to prevent public disclosure, the parties added a provision prohibiting publication of the Agreement to the jury.

It is in this context that we consider the intersection of this partial confidentiality clause and the parties' promise to "put this Agreement on the record with the court" after the verdict. The District Court correctly construed the partial confidentiality provision as operating only until the jury's verdict for three reasons.

8

First, the natural meaning of the requirement that the Agreement be placed "on the record" is that the Agreement would become part of the public record of the judicial proceeding. Of course, the word "public" does not appear in that provision — but nor does any reference to filing the Agreement under seal (the only mechanism by which the Agreement could be both on the record and nonpublic). However, the parties could have no control over whether the District Court would allow the Agreement to be filed under seal. It would make little sense for the parties to create an obligation that they would not have the power to uphold. Indeed, the District Court ultimately did rule that all filings in the case would be public given the involvement of the Erie County Office of Children and Youth. Based on that reality, the only construction to which this language is "reasonably susceptible," Murphy, 777 A.2d at 430, is that "on the record" means publicly available.

Second, the Agreement's general term regarding confidentiality is qualified by its more specific terms regarding that subject. See In re Alloy Mfg. Co. Emp. Trust, 192 A.2d 394, 396 (Pa. 1963). This canon of construction dictates that the partial confidentiality term, which was never intended nor able to provide absolute secrecy, operated only until the Agreement was to become publicly available after the jury's verdict.

Third, the parties made clear their "'intention'" in entering into the Agreement to "'settle this matter once and for all'" so that "'no litigation . . . [would] extend beyond the jury verdict . . . .'" Defs.' Br. 14-15 (quoting Agreement ¶ 7). To prolong the confidentiality obligation beyond the verdict would only increase the possibility of

9

litigation in this case, and not bring the desired finality. See Capek v. Devito, 767 A.2d 1047, 1050 (Pa. 2001) (holding that courts must "give effect to all of the provisions" of a contract). The District Court's construction of the Agreement therefore reflected "the most reasonable, probable, and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished." Unit Vending Corp. v. Lacas, 190 A.2d 298, 300 (Pa. 1963).

Given this contract construction, the asserted public disclosure by the defendants — weeks after the verdict — was not a breach. In contrast, Bryan did materially breach, as the District Court found, by refusing to stipulate to dismissal of the case after the $2,700,000 payment by the defendants. That material breach, in turn, discharged the defendants of any additional obligations under the Agreement.

IV.

For the foregoing reasons, we will affirm the judgment of the District Court.

10